## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DONALD D. GADDIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | NO. 21-CV-_____ |
| | ) | |
| **Bryan DeMattei, Sam Ward, William** | ) | |
| **Lannom, Logan Spinka, Tom Stearns,** | ) | |
| **William Oglesby, John Fleming,** | ) | |
| **Andrew Wilson, Betty Caraway, Jennifer** | ) | |
| **Page, Justin Dwyer, Jesse Thompson, Brandon** | ) | |
| **Zanotti, Williamson Huddleston, Jesse** | ) | |
| **Thompson,  Mary Griffith, Dorothy McCombs,** | ) | |
| **Mary Griffith, Dorothy McCombs, and** | ) | |
| **Brenda Grant,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT
## SEEKING DAMAGES FOR A CONSPIRACY
## TO VIOLATE OF PLAINTIFF'S CONSTITUTIONAL
## RIGHTS AND FALSE ARRESTS

### PRELIMINARY STATEMENT

This is a civil rights action under 42 U.S.C. § 1983 of the United States Code commenced by the Plaintiff, a resident of the City of Marion, Illinois, for the violation of his United States Constitutional rights by the Defendants.  Plaintiff claims that the Defendants have conspired together to deprive him of constitutional rights and have engaged in a series of overt acts in furtherance of the conspiracy.  Plaintiff has also joined counts alleging false arrests. Plaintiff is seeking damages for his wrongful incarceration.  In addition, Plaintiff seeks litigation costs and expenses against all of the named Defendants. The Plaintiff seeks compensatory damages, punitive damages, attorney fees, and a trial by jury.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this suit as to the 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1343. Pursuant to 42 U.S.C. § 1988, this Court has jurisdiction over Plaintiff's claims for costs and attorney fees.

2. Venue lies pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

## COUNT I – CONSPIRACY TO
## VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS
## PARTIES TO THE CONSPIRACY
## NOT NAMED AS DEFENDANTS
## IN THIS COMPLAINT

Now Comes the Plaintiff, Donald Gaddis, by and through his Attorney, Darrell Dunham, and for Count I of his Complaint against the Defendants, he says:

### THE PARTIES

3. The Plaintiff, Donald D. Gaddis ("Gaddis"), is an adult who resided in the City of Marion, Illinois, at the time of the events complained of herein. As alleged more fully herein, Gaddis had engaged in a pattern and course of conduct that is fully protected by the First Amendment of the United States Constitution. Among those activities, Gaddis had exercised his right to free speech by reporting illegal activity to the police, by posting signs on telephone poles in Williamson County, Illinois critical the States Attorney, the Sheriff, local judges, Sheriff's Deputies, Marion City Police Officers, and Courthouse employees, and by speaking outside of the Williamson County Courthouse.

4. Defendant Bryan DeMattei was an officer working for the Marion City Police Department. On information and belief, DeMattei has been discharged from the police force for reasons that made him unfit to serve.

5. Defendant Sam Ward is a Marion City Police Officer.

6. Defendant William Lannom is a Marion City Police Officer.

7. Defendant Logan Spinka is a Marion City Police Officer.

8. Defendant Tom Stearns is a Marion City Police Officer.

9. Defendant William Oglesby is a Williamson County Sheriff's deputy.

10. Defendant John Fleming is a Williamson County Sheriff's deputy.

11. Defendant Andrew Wilson was the Circuit Clerk for Williamson County, Illinois. He no longer holds that position.

12. Defendant Betty Caraway is an employee of the Williamson County States Attorney's office.

13. Defendant Jennifer Page is a court reporter whose place of employment is the Williamson County Courthouse.

14. Defendant Jesse Thompson is a Marion Police Officer.

15. Defendant Justin Dwyer is a Marion City Police Officer.

16. Brandon Zanotti is the States Attorney for Williamson County, Illinois.

17. William Huddleston is an officer working for the Marion Police Department.

18. Mary Griffith is a officer working for the Marion Police Department.

19. Jesse Thompson is an officer working for the Marion Police Department.

20. Defendant Dorothy McCombs is Plaintiff's neighbor.

21. Defendant Brenda Grant is Plaintiff's neighbor.

22. Matthew Goetten is a employee of the Attorney General of the State of Illinois and has been assigned to prosecute the Plaintiff in various matters where Plaintiff is alleged to have violated Illinois criminal laws. Goetten is not named as a party defendant because he is entitled to immunity.

23. Judge Carey Gill is a judge presiding in Williamson County, Illinois. Judge Gill is

not named as a party defendant because she is entitled to immunity.

24.   Judge Amanda Gott is a judge who sits in Jackson County, but she presided in a case where Plaintiff was named as party.  Judge Gott is not named as a party defendant because she is entitled to immunity.

25.   Brad Bleyer was the Presiding Judge for the Williamson County Circuit Court. Former Judge Lewis is not named as a party because he is entitled to immunity.

26.   Judge Brian Lewis presided over case 2019-CF-178 but has now retired.  Former Judge Lewis is not named as a party because he is entitled to immunity.

## PLAINTIFF'S PROTECTED
## CONSTITUTIONAL RIGHTS

27.   Beginning on October 24, 2017, Plaintiff had a series of interactions with the personnel in the Marion City Police Department, personnel in the Williamson County Sheriff's Department, personnel in the Williamson County States Attorney's Office, personnel working in the Williamson County Courthouse, including the chief judge.

28.   Beginning on that day, Plaintiff formed the belief that, based upon the way he had been and was being treated, the power structure in Williamson County was corrupt and required change.

29.   As a result of his beliefs, Plaintiff began, on or about October 28, 2017, to exercise his constitutional rights in the following ways:

A)   He established a pattern and return of filing a complaint with the Marion Police Department on every occasion when he concluded that his constitutional rights had been violated.

B)   He posted signs in his yard criticizing Marion City Police Officers, the

Williamson County Sheriff, the Williamson County States Attorney, and judges presiding in cases in Williamson County.

C)   He posted signs on telephone poles located in Williamson County, criticizing Marion City Police Officers, the Williamson County Sheriff, the Williamson County States Attorney, and judges presiding in cases in Williamson County.

D)   He exercised his right to free speech by standing on a corner outside the Williamson County Courthouse displaying signs critical of the Williamson County justice system, further informing the public of his opinions by exercising his right to free speech.

E)   In furtherance of his right to free speech, Plaintiff parked his vehicle on the street and in a parking lot near the courthouse.  Parties involved in the conspiracy alleged herein who are not known to Plaintiff, caused signs to be posted which claimed that the locations where Plaintiff parked his vehicle were designated for courthouse employees only.   Said signs were posted, although no ordinance had been passed authorizing the posting of said signs.   The signs were posted because the conspirators were angry about the Plaintiff exercising his right to free speech near the courthouse. As a result, Plaintiff began to monitor and take photographs of vehicles that were parked in contravention of the posted signs.

**AGREEMENT/MEETING OF THE MINDS**

30.  Beginning on or about November 1, 2017, all of the above-name parties to the conspiracy alleged herein became aware of the Plaintiff's constitutionally protected activities. Plaintiff was frequently mentioned among all of the Marion City Police Officers as a person whose actions should be closely monitored.

31.  Plaintiff was frequently mentioned among all of the Williamson County Law Enforcement Officers as a person whose actions should be closely monitored.

32.  Plaintiff was frequently mentioned among Williamson County Court personnel as a person whose actions should be closely monitored.

33.  Plaintiff was frequently mentioned among personnel in the Williamson County States Attorney's office as someone whom should be vigorously prosecuted.

34.  Judge Bleyer, Zanotti, and Page were outspoken in their claimed belief that Plaintiff's exercise of his constitutional rights to be evidence that he was mentally unbalanced. Page further had numerous discussion with personnel working in the Williamson County Courthouse who she claims shared her conclusions about Plaintiff.  The rumors and gossip reached the point where a warning flyer's was circulated in the courthouse claiming that Plaintiff as an allegedly dangerous person.

35.  Based upon information sufficient to form a belief, Plaintiff alleges that all of the other named Defendants participated in the rumor and gossip as to the Plaintiff and stated that they shared these same conclusions.

36.  Plaintiff had never been diagnosed as having a mental condition.   He has never been charged with being physically abusive.  He has never been charged with making any kind of verbal threats evidencing any intent to cause physical harm.

37.  The Defendants herein reached an agreement that a plan should be put in place to retaliate against the Plaintiff because of his decision to exercise is constitutional rights.  Said plan continues to this day.

## TORTIOUS ACTS

## OCTOBER 24, 2017

38.   On or about October 24, 2017, the Defendant McCombs procured a Temporary No Contact Order against the Plaintiff on an ex parte basis;

39.   The Temporary Order contained language which violated Plaintiff's right to freedom of speech in that the order prohibited him from communicating to or about McCombs.

40.   On or about February 14, 2018, the proceedings were dismissed on the McCombs's motion and therefore were terminated in the Plaintiff's favor.

41.   Defendants, DeMattei, Lannom, and Spinka, arrested Plaintiff for disorderly conduct on said date.  At that time, the Defendants were in uniform and acting under the color of law.

42.   Based upon information sufficient to form a belief, Mary Griffith urged McCombs to file an order of protection proceeding against the Plaintiff.

43.   At the urging of Mary Griffth, Dorothy McCombs filed a no stalking no contact petition in the Williamson County Circuit Court.   The proceedings were vacated on February 2, 2018.

44.   Defendants, DeMattei, Lannom, Spinka, and Griffth, were acting under color of law during these events.

**MARCH 25, 2018**

45.   On March 25, 2018, Plaintiff was driving his vehicle, and he noticed Defendant Bryan DeMattei in the  driveway of his home with another man.  Plaintiff later learned that he was Marion Police Officer, Sam Ward.   Plaintiff decided to drive up to the home.   He parked his car in the driveway, got out of his vehicle and approached the two men.

46.   DeMattei then went inside his house without speaking to Plaintiff while Ward remained outside.  Plaintiff intended to tell DeMattei that what he did was wrong when he had previously issued a false statement and that the DeMattei had negatively impacted Plaintiff's life.

47. Sam Ward stated that Plaitniff needed to leave because DeMattei and Ward had been drinking.  As Plaintiff was attempting to get into his vehicle, Ward took Plaintiff to the ground and would not allow him to leave.  DeMattei then came out of the house.  Demattei and Ward called the Marion Police who transferred the call to the Williamson County Sheriff.

48. Plaintiff was charged with a felony, and those charges are still pending.  Plaintiff has pled not guilty of any alleged crime.  2018-CF-178.

49. At a preliminary hearing in case 2018-CF-178, Defendant, William Oglesby, testified that he arrested Plaintiff and that his car was towed and inventoried.  He testified the vehicle was not searched, that he did not read any materials, and that no police officer would have had the authority to search the vehicle or read any materials.  Ogelesby's testimony was false.

50. In fact, DeMattei was permitted to search Plaintiff's vehicle.  DeMattei read the contents of a notebook containing Plaintiff's personal thoughts that was in Plaintiff's vehicle.

51. DeMattei told Defendant Lannom about the contents of the notebook.  Lannom was not present when Plaintiff's notebook was read by DeMattei.

52. Lannom filed a no stalking no contact proceedings in the Williamson County Circuit Court against Plaintiff based on the statements Plaintiff had made in a private notebook.  Those charges were dismissed at the plenary hearing.

53. On the same date that Lannom filed his case, DeMattei also filed a no stalking no contact case against Plaintiff.  The case was dismissed for insufficient evidence.  Both orders violated Plaintiff's constitutional rights in that they prohibited Plaintiff from communicating to or about Lannom and DeMattei.

54. The criminal case is still pending.  During the criminal case, Plaintiff asked

prosecutor Goetten to produce three items of evidence: 1) the audio of the call by DeMattei and Ward to the Marion City Police; 2) the audio of the call to the Williamson County Sheriff by DeMattei and Ward; and 3) the in-car audio and video of Defendant Ogelesby's vehicle where Plaintiff was placed at the time of his arrest.  Goetten responded that none of the three items were available because Ogelesby testified at the preliminay hearing that the video and audio from his vehicle could not be retrieved.  In addition, Goetten claimed that neither audio to the Maroin Police or the Williamson County Sheriff could be produced.  The audio to the Williamson County Sheriff has never been produced.  The audio of the call to the Marion City Police Department was produced only because Plaintiff subpoenaed the audio.  Plaintiff's Motion to Dismiss the charges because of a discovery violation was denied by Judge Brian Lewis.

55.  Defendant Ogelsby, was acting under color of law during these events.

56.  Although not named as a Defendant in this case, Brian Lewis and Matthew Goetten were acting under the color of law during these events.

57.  Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been arrested and the illegal search and the order of protection proceedings would not have been filed  if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

## NOVEMBER 30, 2018

58.  On or about November 30, 2018, John Fleming and Plaintiff had an encounter at a Casey General Store in Johnston City, Illinois, around 8:00 a.m. in the morning with Defendant Fleming.  Fleming was off duty at the time.

59.  Words were exchanged between the Plaintiff and Fleming and Fleming engaged in the following behaviors:

A)      Fleming extended the middle finger of his right hand in direction toward the

        Plaintiff on two occasions;

B)      Fleming extended his index finger of one of his hands in the Plaintiff's direction

        and flexed his finger mimicking a shooting gesture toward the Plaintiff;

C)      Among other things Fleming said "fuck you" to the Plaintiff;

60.   Immediately thereafter, Fleming presented himself to the Johnston City Police

Department and caused the Plaintiff to be arrested for aggravated assault;

61.   At the time of the exchange, the Plaintiff was either in his vehicle or when he was

outside of his vehicle he was in excess of 15 feet from Fleming.

62.   Formal charges were filed in the Williamson County Circuit Court, charging the

Plaintiff with a felony.  2018-CF-685.

63.   On July 31, 2020, a preliminary hearing was held in this case in which John Fleming

was the only witness.  During said hearing, Fleming gave the following testimony which was

false:

(1)     Fleming testified that he did not engage in any conduct which would have caused

        the Plaintiff to be provoked whereas a video of the event plainly shows  Fleming

        engaging in a minimum of three threatening gestures.

(2)     Fleming testified that Plaintiff engaged in a threatening gesture toward him which

        testimony was false.

(3)     Fleming denied engaging in any threatening gestures directed at the Plaintiff

        whereas a video of the event plainly shows Defendant engaging in a minimum of

        three threatening gestures.

(4)     Fleming testified that he stayed inside the store until such time that Plaintiff left

the area.   A video of this event does not support this testimony.

(5)    Fleming testified that he felt threatened by the Plaintiff, but a video shows him

laughing with a smile on his face.

64.   At the bond hearing, Brandon Zanotti's deputy argued that Plaintiff should not be

permitted to be released on bond unless he submitted to a mental evaluation.  Plaintiff was

denied his choice of counsel at that hearing by Judge Lewis.  Bail was conditioned upon his

submitting to a mental evaluation.  Judge Ralph Bloodworth subsequently vacated the mental

health requirement as a condition of bond on the grounds that there was no evidence meeting the

statutory requirement for such an evaluation.

65.   On September 22, 2020, the criminal proceedings were dismissed.

66.   Matthew Goetten had been appointed to prosecute the case.   The cases was

dismissed because Goetten had not complied with Illinois statutory law which permitted him to

be appointed as a prosecutor.  Goetten was acting under color of law at the time that he

conducted the prosecution against Plaintiff, and the prosecution, itself, was under color of law.

67.   At the time that Fleming caused the criminal proceedings to be initiated against the

Plaintiff, Fleming knew that Plaintiff had  not engaged in any conduct that would cause Fleming

to reasonably believe that he was in any danger and Fleming knew that Plaintiff had not engaged

in any acts that would cause him to believe he had been the victim of an assault.

68.   Based upon information sufficient to form a belief, Plaintiff alleges that he would

not have been arrested and prosecuted if he had not engaged in the constitutionally protected

activity described in paragraph 29 above.

### FEBRUARY 14, 2019

69.  On February 14, 2019, Plaintiff was driving in his neighborhood.

70. A plain clothes Marion Police Officer, Defendant Justin Dwyer, chased Plaintiff into his garage. Dwyer claimed that Plantiff did not turn on his turn signal when turning his vehicle as the grounds for chasing the Plaintiff into his garage.

71. Jesse Thompson entered into Plaintiff's garage, pulled him out of his vehicle and took him to the ground, causing serious damage to his ribs.

72. Plaintiff was charged with a misdemeanor.

73. A Motion to Quash the Arrest was filed, but before the judge ruled the charges were dismissed. 19-CM-62

74. Jesse Thompson and Justin Dwyer was acting under the color of law when Dwyer invaded Plaintiff's garage and Thompson took Plaintiff to the ground and damaged his ribs.

75. Matthew Goetten were acting under the color of law during these events.

76. Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been arrested if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

## MARCH 13, 2019

77. On March 13, 2019, Plaintiff called the Marion Police to his home because someone had thrown nails into his driveway.

78. McCombs came out of her house along with another neighbor, Charles Winstead, and watched Plaintiff's interaction with the police. Plaintiff asked them if they had thrown the nails into his driveway. Neither McCombs or Winstead responded. Plaintiff was charged with a crime for making this statement because McCombs had procured an order of protection against Plaintiff.

79. Although the statement was protected by the First Amended to the United States

Constitution, Zanotti elected to file criminal charges against the Plaitniff. The criminal case is still pending. 2019-CM-96

80. The arresting officer and Zanotti were acting under the color of law when the arrest was made and the charges were filed.

81. Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been arrested and prosecuted if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

### APRIL 9-10, 2019

82. On April 9, 2019, Gaddis was arrested for violating an order of protection. He was taken to the Williamson County Jail, held for approximately two hours, and was released when bond was posted in his behalf.

83. On April 10, 2019, Gaddis was arrested for the same charges a second time by Officer Williamson Huddleston at approximately 11:11 a.m.

84. At the time of his arrest, Gaddis told Huddleston that he had been arrested on the same charge the evening before on the same charges.

85. Huddleston acknowledged that he was aware of the fact that he was arresting Gaddis on the same charge a second time, but notwithstanding his knowledge of the prior arrest he proceeded with the second arrest.

86. At the time that Huddleston arrested Gaddis, he had received a report from a law enforcement data base commonly known as the LEADS system, and Huddleston confirmed that the supporting documentation for Gaddis's arrest had not been entered into that system.

87. Based upon information sufficient to form a belief, the fact that Gaddis had been arrested on April 9, 2019, for the charge of violating no contact no stalking order was widely

known through the Marion Police Department prior to Plaintiff's second arrest.

88.  Gaddis was arrested and taken to the Williamson Jail.  He was held for a minimum of 4 hours until he was released on bond.

89.  While Gaddis was held the during the April 10, 2019, he subjected to the following conditions:

A)  His body was searched with the officer repeatedly searching the same body parts in an effort to provoke a response;

B)  He was placed in a holding cell without permitting him to make a telephone call for three to four hours, notwithstanding the fact that Gaddis was given a written notification indicating that he had a right to make a telephone call within one hour and that Gaddis repeatedly asked to make a call and the assistance to make a call;

C)  The holding cell did not have chair, did have a concrete platform, and a concrete floor;

D)  While Gaddis was in the holding cell the temperature was maintain at such low level that he was shivering as a result of the cold;

E)  Gaddis asked for a blanket but his request was denied;

F)  The jail knowingly left Gaddis with a metal key with the hope and expectation that he would use the key in manner so as to justify further mistreatment;

90.  The Williamson County Sheriff, by and through his employees, knew that Gaddis had been arrested the day before on the same charges but refused to permit him to make a telephone call and subjected him to inhuman conditions in an effort to intimidate and harass Gaddis.

91.  The deputy who unnecessarily and aggressively searched Gaddis on April 10, 2019,

was aware of his arrest the prior day as that deputy had processed Gaddis the day before.

92.  The actions of Huddleston and the Williamson County Jail personnel was conducted under the color of law.

93.  Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been arrested if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

### JUNE 7, 2019

94.  On June 7, 2019, Plaintiff had a complaint filed against him for violation a City of Marion ordinance prohibiting the placing of signs or utility poles.  2019-OV-76.

95.  Prior to and after June 7, 2019, other individuals regularly use utility poles located in Marion to post signs.

96.  Based upon information sufficient to form a belief, Plaintiff alleges that he is the only individual who has been prosecuted for posting signs on utility poles.

97.  Many of the signs posted by Plaintiff make statements concerning the corruptness of the Williamson County power structure and are of the type of statement that constitute protected First Amendment speech.

98.  Plaintiff alleges that if he had posted signs that were not critical of the Williamson County power structure the complaint would not have been filed.

99.  The complaint was dismissed after Plaintiff retained a lawyer and filed an answer.

100.  Based upon information sufficient to form a belief, Plaintiff alleges that he the complaint would not have been filed if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

### JUNE 18, 2019

101.   On or about June 18, 2019, John Fleming and Bennie Vick arrested Plaintiff while he was parked near the courthouse.

102.   Plaintiff had not violated any ordinance, rule, or regulation, of any governmental entity that had jurisdiction to regulate parking in the spot where Plaintiff was parked at the time of his arrest.

103.   Although Plaintiff was arrested and incarcerated, no charges were ever filed against the Plaintiff.

104.   At the time of his arrest, Plaintiff had placed a signed in the front yard of his house that stated, "My help comes from the Lord."

105.   Fleming threatened to arrest Plaintiff for disorderly conduct because of the sign that Plaintiff had placed in his front yard.

106.   Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been arrested if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

## JUNE 29, 2019

107.   On or about the morning hours of June 29, 2018, the Marion Police Department, by and through Tom Stearns and Logan Spinka, responded to the McCombs's and Grant's communications and upon arrival to the neighborhood where Plaintiff and McCombs and Grant live, Stearns, and Spinka came upon the Plaintiff and restrained him while one of the officers interviewed the Defendants Grant and McCombs.

108.   Plaintiff was placed under arrest for the alleged crime of violating a no-contact no-stalking order.

109.   At the time of his arrest the Defendant Officers were acting under the color of law.

110.   Prior to his arrest Plaintiff repeatedly told the Defendant Officers that there was the was no existing order or protection in place.

111.   Plaintiff was incarcerated for approximately three hours at the Williamson County Jail notwithstanding his protestation that his was illegally arrested.

112.   On that same day,   Defendant Jason Watts arrested Plaintiff for felony unlawful restraint. 18-CF-383. Defendant supposedly committed a felony when a suspicious person pulled into his driveway.

113.   Plaintiff  pulled his car in the front of his house and engaged a person in conversation about why that person was parked in Plaintiff's driveway.   At no time was the stranger blocked in.  The person, who turned out to be person named Kevin Hall, was much heavier than the Plaintiff.  The felony  charges were dropped.

114.   At no time did Defendant Watts have probable cause to believe that Plaintiff had committed a felony.  Watts was acting under color of law when he arrested Plaintiff.

115.   Although not named as a Defendant in this case, Brian Lewis and Matthew Goetten were acting under the color of law during these events.   Prior to his retirement, Judge Lewis had presided over the.   Goetten was appointed to be the prosecutor.

116.   Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been arrested if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

### JULY 9, 2019

117.   On July 9, 2019, the Judge Brad Bleyer, signed and entered an order entitled "General Administrative Order" wherein he directed Williamson County Courthouse security personnel to preclude and remove the Plaintiff from parking within 300 feet of the Williamson

County Courthouse.

118.   Said order made express findings of fact.

119.   Judge Bleyer made the following findings of fact: "Donald D. Gaddis has exhibited a pattern of erratic, intimidating, threatening, and harassing behavior while parking in employee used and designated parking areas...."

120.   This order was not entered in a case that was pending, but rather was entered as a General Administrative Order and no party to any suit in Williamson County asked for this relief.

121.   The Order was entered without any prior notice to the Plaintiff or a hearing.

122.   As a result of said order,  Plaintiff's vehicle was seized and subject to impound.

123.   At the time the order was issued, Judge Bleyer was acting under color of law.

124.   On or about April 14, 2019, Brad Bleyer had an exchange while Plaintiff was exercising his first amendment rights across from the courthouse.  Bleyer was the presiding judge of the court at the time.  Bleyer told Plaintiff he should cross the street and "kick your ass."

125.   Based upon information sufficient to form a belief, Plaintiff alleges that Judge Bleyer's threat and his order would not have occurred if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

**JANUARY 9, 2020**

126.   Prosecutor Goetten filed felony charges against the Plaintiff because he allegedly assaulted a courthouse deputy on January 9, 2020.

127.   The charges were dismissed by Judge Lambert because Goetten had failed to comply with Illinois statutory law as to the appointment of a special prosecutor.

128.   During the preliminary hearing, Defendant John Fleming testified that he observed the Plaintiff engage in a threatening gesture.  A video of the event was played for Fleming, and

Fleming had to recant his testimony that he observed the Plaintiff engaged in a threatening gesture. In fact the video plainly shows that the alleged victim placed his had on the Plaintiff's chest without Plaintiff's permission.

129.   Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been arrested if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

## MAY 5, 2020

130.   On May 5, 2020, Defendant Wilson, by and through his employees, issued a summons and served on Plaintiff a Temporary No Stalking No Contact Order which was entered on an *ex parte* basis, which among other things prohibited Plaintiff from coming within a distance of 500 feet from the Petitioner, which includes the Plaintiff's right to access the public courthouse.   Defendant Betty Caraway helped to procure the Order.   At that time, Caraway was acting under the color of law because she was Zanotti's employee.

131.   The summons and order was served upon the Plaintiff, and despite Plaintiff's efforts to secure an earlier hearing, the matter was originally set for a plenary hearing on June 12, 2020, but the case has been continued.

132.   The temporary order specifically prohibits Plaintiff from engaging in any actions which "communicates to or about" Page. The Illinois Supreme Court and the Illinois Appellate Court both have held that the order violates Plaintiff's right to free speech and is therefore unconstitutional.

133.   Based upon information sufficient to form a belief, Defendant Zanotti, by and through an employee in his office, Betty Caraway, procured the entry of said order in that they obtained the forms from Defendant Wilson's office, they assisted the Petitioner in filling out the

forms, and they further assisted in the procurement of the temporary order.

134.   Based upon information sufficient to form a belief, Defendant Wilson,  by and through his employees, procured the entry of said order in that his employees delivered the form order to Zanotti's employees and agents.

135.   Said temporary order is illegal, null, and void, for one or more of the following reasons:

a.   The Order violates the Plaintiff's constitutional right to free speech. See *People  Relerford,* 2017 IL 121094, 104 N.E.3rd 341; *Flood v. Wilk,* 2019 IL App (1st)172792, 125 N.E.3rd 1114;

b.   The order is not authorized by the applicable statute in that the language "communicates to or about" was removed from the applicable statute effective January 1, 2019. 740 ILCS 21/10, (effective January 1, 2019). Therefore, the entry of said order is in direct conflict with the governing statute.

c.   In an unpublished opinion, the Illinois Fifth District Court of Appeals confirmed that this language is contrary to Illinois Law and must be removed from the form order. *Bryant v. Hutchison*, 2020 IL App (5th) 190508-U

136.   As a proximate cause of the actions of all of Defendants named herein, Plaintiff's right to free speech has been infringed in that he has been prohibited from communicating to or about the Petitioner under the threat of criminal prosecution.

137.   In the case, Defendant Page was the Petitioner.

138.   Judge Gott refused to vacate the temporary order with regard to the unconstitutional

language on three separate occasions.

139.   In the case, Page introduced evidence of the Plaintiff's signs that he had posted over Plaintiff's objection.  Neither Page nor Judge Gott offered any explanation as to why the evidence was not constitutionally protected free speech.

140.   In the case, Page contended that the Plaintiff's act in taking her picture along with other courthouse employees constituted an act of stalking.  Judge Gott ruled that the act of taking a picture was not protected first amendment speech.  Judge Gott's actions were while acting under the color of law.

141.   The case is on appeal.

142.   Based upon information sufficient to form a belief, Plaintiff alleges that he would not have been required to respond to the proceedings if he had not engaged in the constitutionally protected activity described in paragraph 29 above.

## OTHER PROCEEDINGS

143.   Many of the matters alleged herein are the subject matter of other proceedings.  As to matters pending in the state trial court, Plaintiff intends to take a voluntarily dismissal and move to amend this Complaint to include those proceedings.  As to matters pending in the State Appellate Court, Plaintiff intends file those cases in this Court after they have been resolved on appeal.  As to those matters, pending in this Court, Plaintiff plans to file a Motion to Consolidate those cases with the instant suit.  As to those matters on appeal to the Seventh Circuit, Plaintiff intends filed a Motion to consolidate after they have been resolved on appeal.  The pending matters are:

1)      Gaddis v.  DeMattei, et. al,  NO. 18-CV-1464, (S. D. Illinois)

2)      Gaddis v. DeMattei, et. al, No. 20-2424 (Seventh Circuit Court of Appeals)

3)      Gaddis v. Bleyer, 19-CV-1334 (S. D. Illinois)

4)      Gaddis v. DeMattei, et. al, 20-L-36 (Williamson County Circuit Court)

5)      Gaddis v. Fleming 20-L-159  (Williamson County Circuit Court)

6)      Gaddis v. Zanotti, 20-L-73  (Williamson County Circuit Court)

7)      Gaddis v. McCombs, 18-L-115  (Williamson County Circuit Court)

8)      Gaddis v. Lannom, 5-20-0327 (Illinois Fifth District Court of Appeals)

9)      Page v. Gaddis,  5-20-0231 (Illinois Fifth District Court of Appeals)

10)     Gaddis v. Watts, 20-2723 (Seventh Circuit Court of Appeals)

144.   Plaintiff has been damaged in the following ways:

A)      He has been deprived of his right to exercise is right to free speech;

B)      He has been wrongfully arrested and incarcerated;

C)      He has been surveiled and monitored constantly by Marion Police and the Williamson County Sheriff, in particular, John Fleming.

D)      His right to privacy has been intruded upon in that he has been illegally arrested while at his home, his notebook was read without his permission, and he is under constant watch.

E)      He is a constant state of anxiety.

F)      He has deprived access to the courthouse, a public place.

WHEREFORE, Plaintiff prays for judgment against all of the Defendant conspirators as follows:

A)      Compensatory as will be determined by this Court, but in no event less than $1,000,000.00;

B)      Punitive damages in the amount to be determined by this Court, but in no event

less than $3,000,000.00;

C)      For reasonable attorney fees;

D)      For his costs of suit.

Plaintiff demands a jury trial.

Dated: February 13, 2021

ss// Darrell Dunham
Darrell Dunham
308 West Walnut Street
Carbondale, IL 62901
618-549-9800
Fax: 618-549-9805
email:  darrell.dunham@gmail.com

### COUNT II – FALSE ARREST
### BROUGHT AGAINST DEFENDANTS
### THOMPSON AND DWYER

Now Comes the Plaintiff, Donald Gaddis, by and through his Attorney, Darrell Dunham, and for Count II of his Complaint against the Defendants, he says:

145.  On February 14, 2019, Plaintiff was driving in his neighborhood.

146.  A plain clothes Marion Police Officer, Defendant Justin Dwyer, chased Plaintiff into his garage.   Dwyer claimed that Plantiff did not turn on his turn signal when turning his vehicle as the grounds for chasing the Plaintiff into his garage.

147.  Defendant Jesse Thompson entered into Plaintiff's garage, pulled him out of his vehicle and took him to the ground, causing serious damage to his ribs.

148.  Plaintiff was charged with a misdemeanor.

149.  A Motion to Quash the Arrest was filed, but before the judge ruled the charges were dismissed.  19-CM-62

150.  Justin Dwyer and Jesse Thompson was acting under the color of law when they

invaded Plaintiff's garage, took Plaintiff to the ground, and damaged his ribs.

151.  The Plaintiff's garage was part of his place of abode.

152.  The Defendants did not have probable cause to arrest him.

153.  Pursuant to the arrest, Plaintiff was incarcerated.

154.  Both Defendants were acting under color of law at the time of the arrest.

WHEREFORE, Plaintiff prays for judgment against Dwyer and Thompson as follows:

A)  Compensatory as will be determined by this Court, but in no event less than $25,000.00;

B)  Punitive damages in the amount to be determined by this Court, but in no event less than $50,000.00;

C)  For reasonable attorney fees;

D)  For his costs of suit.

Plaintiff demands a jury trial.

Dated: February 13, 2021

ss// Darrell Dunham
Darrell Dunham
308 West Walnut Street
Carbondale, IL 62901
618-549-9800
Fax: 618-549-9805
email:  darrell.dunham@gmail.com

## COUNT III – FALSE ARREST
## BROUGHT AGAINST FLEMING AND VICK

Now Comes the Plaintiff, Donald Gaddis, by and through his Attorney, Darrell Dunham, and for Count III of his Complaint against the Defendants, he says:

155.  On or about June 18, 2019, John Fleming and Bennie Vick arrested Plaintiff while he was parked near the courthouse.

156.   Plaintiff had not violated any ordinance, rule, or regulation, of any governmental entity that had jurisdiction to regulate parking in the spot where Plaintiff was parked.

157.   Although Plaintiff was arrested and incarcerated, no charges were ever filed against the Plaintiff.

158.   The Defendants lacked probable cause to arrest Plaintiff.

159.   Pursuant to the arrest, Plaintiff was incarcerated.

160.   Both Defendants were acting under color of law at the time of the arrest.

WHEREFORE, Plaintiff prays for judgment against Vick and Fleming as follows:

A)      Compensatory as will be determined by this Court, but in no event less than $25,000.00;

B)      Punitive damages in the amount to be determined by this Court, but in no event less than $50,000.00;

C)      For reasonable attorney fees;

D)      For his costs of suit.

Plaintiff demands a jury trial.

Dated: February 13, 2021

<u>ss// Darrell Dunham</u>
Darrell Dunham
308 West Walnut Street
Carbondale, IL 62901
618-549-9800
Fax: 618-549-9805
email:   darrell.dunham@gmail.com

## COUNT IV – FALSE ARREST
## BROUGHT AGAINST DEFENDANT
## FLEMING

Now Comes the Plaintiff, Donald Gaddis, by and through his Attorney, Darrell Dunham, and for Count IV of his Complaint against the Defendants, he says:

161.   On or about January 9, 2021, Plaintiff was arrested for allegedly assaulting an law enforcement officer.

162.   Prosecutor Goetten filed felony charges against the Plaintiff because he allegedly assaulted a courthouse deputy.

163.   The charges were dismissed by Judge Lambert because Goetten had failed to comply with Illinois statutory law as to the appointment of a special prosecutor.

164.   During the preliminary hearing, Defendant John Fleming testified that he observed the Plaintiff engage in a threatening gesture.   A video of the event was played for Fleming, and Fleming had to recant his testimony that he observed the Plaintiff engaged in a threatening gesture.  In fact the video plainly shows that the alleged victim placed his had on the Plaintiff's chest without Plaintiff's permission.

165.   Fleming lacked probable cause to arrest Plaintiff.

166.   Pursuant to the arrest, Plaintiff was incarcerated.

167.   Fleming was acting under color of law at the time of the arrest.

WHEREFORE, Plaintiff prays for judgment against Fleming as follows:

A)     Compensatory as will be determined by this Court, but in no event less than $25,000.00;

B)     Punitive damages in the amount to be determined by this Court, but in no event less than $50,000.00;

C)     For reasonable attorney fees;

D)     For his costs of suit.

Plaintiff demands a jury trial.

Dated: February 13, 2021

ss// Darrell Dunham
Darrell Dunham
308 West Walnut Street
Carbondale, IL 62901
618-549-9800
Fax: 618-549-9805
email:   darrell.dunham@gmail.com