IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD GADDIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-179-MAB |
| | ) |
| BRYAN DEMATTEI, SAM WARD, | ) |
| WILLIAM LANNOM, | ) |
| LOGAN SPINKA, TOM STEARNS, | ) |
| WILLIAM OGLESBY, | ) |
| JOHN FLEMING, ANDREW WILSON, | ) |
| BETTY CARAWAY, JENNIFER PAGE, | ) |
| JESSE THOMPSON, JUSTIN DWYER, | ) |
| BRANDON ZANOTTI, | ) |
| WILLIAM HUDDLESTON, | ) |
| MARY GRIFFITH, | ) |
| DOROTHY MCCOMBS, and | ) |
| BRENDA GRANT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on ten motions to dismiss filed by thirteen of the seventeen named Defendants (Docs. 95, 97, 98, 100, 102, 104, 106, 108, 110, and 112) and a motion to stay filed by Defendants (Doc. 131; *see also* Doc. 134).

## BACKGROUND

Plaintiff Donald Gaddis is/was a resident of the city of Marion, Illinois, which lies in Williamson County. Over the course of the last four or so years, he has filed numerous lawsuits in federal and state courts challenging his treatment by the police, elected and appointed government officials, local government employees, and his neighbors. This

case is his latest challenge. In Count 1 of the four-count complaint, Gaddis alleges that he was the victim of a vast conspiracy by 17 named Defendants and an array of non-Defendants, dating back to November 2017 and continuing to the present day, to retaliate against him for speaking out about corruption in the Williamson County "power structure" (Doc. 1). Many of the incidents that Gaddis alleges were part of the conspiracy have been or currently are the subject of criminal proceedings and/or Gaddis's many civil suits. As Defendants said, this new lawsuit appears to be "an effort to consolidate the sprawling web of litigation that he has initiated" (Doc. 103, p. 1). Aside from the conspiracy claim, Gaddis also brings claims for false arrest in Counts 2, 3, and 4 (Doc. 1).

Thirteen of the seventeen Defendants—Betty Caraway (Doc. 95), Mary Griffith (Doc. 97), Logan Spinka (Docs. 98, 99), Tom Stearns (Docs. 100, 101), Bryan DeMattei (Docs. 102, 103), Sam Ward (Docs. 104, 105), William Lannom (Docs. 106, 107), Justin Dwyer and Jesse Thompson (Docs. 108, 109), William Huddleston (Docs. 110, 111), and Jennifer Page, Andrew Wilson, and Brandon Zanotti (Docs. 112, 113)—filed motions to dismiss.[1] Gaddis filed responses in opposition to each motion (Docs. 114 through 121, 123), with the exception of the motion filed by Page, Wilson, and Zanotti.

After all of the motions to dismiss were filed, the Court held a status conference to discuss scheduling issues and the utility of a stay pending resolution of the motions (Docs. 122, 128). At the hearing, the Court determined that written briefing was required (Doc. 128). Accordingly, Defendants filed a motion to stay the proceedings (Doc. 131), to

---

[1] Defendants John Fleming, Brenda Grant, Dorothy McCombs, and Craig Oglesby did not file motions to dismiss.

which Gaddis filed a response in opposition (Doc. 132), and Defendants filed a reply (Doc. 133).

The motion to stay was granted to the extent that it requested this matter not proceed with discovery until the pending motions to dismiss were ruled on (Doc. 134). It was taken under advisement as to all other arguments (*e.g.,* duplicative litigation, improper claim splitting, res judicata, *Younger* abstention), which the Court said would be considered in conjunction with the motions to dismiss (*Id.*).

### FACTUAL BACKGROUND

For purposes of deciding the motions to dismiss that are before the Court, the Court considers the facts alleged in the complaint, which are assumed to be true for purposes of this Order with exceptions explained when needed. The Court also considers additional facts presented by Gaddis in his response briefs that are consistent with the complaint and information that is subject to proper judicial notice. *E.g., Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

Gaddis alleges that beginning on October 24, 2017, he had "a series of interactions" (described below) with personnel from the Marion City Police Department, the Williamson County Sheriff's Department, the Williamson County State's Attorney's Office, and the Williamson County Courthouse, which led him to believe "the power structure in Williamson County was corrupt and required change" (Doc. 1, ¶¶27, 28). On October 28, 2017, Gaddis began "to exercise his constitutional rights" by, amongst other things, filing complaints with the Marion Police; posting signs in his yard and hanging signs throughout the County, some of which criticized the police, judges, and the State's

Attorney; and demonstrating outside the County courthouse (*Id.* at ¶29).

Gaddis alleges that "on or about November 1, 2017," all of the Defendants became aware of his "constitutionally protected activities," (Doc. 1, ¶30), which the Court assumes to mean his public criticisms of government officials. He claims he was then frequently mentioned by the police and court personnel as someone whose actions should be closely monitored, and by the prosecutor's office as someone who should be vigorously prosecuted (*Id.* at ¶¶30–33). Gaddis further alleges that Judge Brad Bleyer (who is not a Defendant), State's Attorney (and Defendant) Brandon Zanotti, and court reporter (and Defendant) Jennifer Page, were outspoken in their belief that Gaddis was mentally unbalanced (*Id.* at ¶34). He claims the gossip reached a point that a flyer was circulated in the Williamson County Courthouse warning that he was dangerous (*Id.* at ¶34). He also believes that "all other named Defendants" participated in the rumors and gossip about him and shared the belief that he was mentally unwell (*Id.* at ¶35).

Finally, Gaddis alleges that Defendants "reached an agreement that a plan should be put in place to retaliate against [him] because of his decision to exercise his constitutional rights" (Doc. 1, ¶¶30, 37). He claims the retaliation came about in a series of "tortious acts" over the course of approximately two and a half years, where "he was arrested and/or prosecuted by Defendants without probable cause or justification" (Doc. 117, pp. 3–4; *see also* Doc. 1, pp. 6–21). The Court will summarize each of the alleged retaliatory acts below and any related litigation.

- **October 24, 2017** (Doc. 1, ¶¶38–44)**:** The allegations regarding this particular incident are murky, making it difficult to determine a chronology of events based on the complaint alone. However, the complaint in conjunction with facts

appropriate for judicial notice tell the following story. On October 20, 2017, there was some sort of incident between Gaddis and his neighbors, including Defendant Dorothy McCombs, and the police were called. *See* SDIL Case No. 18-1729-SMY, Doc. 1 (Gaddis's complaint alleging that he was arrested on Oct. 20, 2017); *see also id.* at Doc. 58-1 (police report indicating Gaddis was arrested on Oct. 20, 2017, for disorderly conduct). Gaddis was arrested for disorderly conduct by Marion police officers and Defendants Bryan DeMattei, William Lannom, and Logan Spinka (Doc. 1, ¶41). On October 24th, Dorothy McCombs applied for and was granted an emergency no stalking, no contact order (hereinafter referred to as an "order of protection" or "protective order," for the sake of ease) against Gaddis (Doc. 1, ¶38). Gaddis alleges that McCombs applied for the order of protection at the "urging" of Marion police officer and Defendant Mary Griffith (Doc. 1, ¶¶42, 43). Gaddis claims the order of protection violated his free speech rights in that it prohibited him from communicating to or about McCombs (Doc. 1, ¶39).

- **Related Criminal Case:** There is no indication that charges were ever brought against Gaddis following his arrest.
- **Related Civil Case #1:** Circuit Court of Williamson County, Case No. 2017-OP-386[2]

  The Court takes judicial notice of Dorothy McCombs' order of protection case. The docket shows that an emergency order of protection was issued on October 24, 2017, and a plenary order was issued on November 8, 2017. McCombs voluntarily dismissed the case in February 2018.
- **Related Civil Case #2:** SDIL Case No. 18-cv-1729-SMY

  The Court takes judicial notice that Gaddis sued a number of individuals, including Officers DeMattei, Lannom, and Spinka, and his neighbors, including McCombs, for false arrest stemming from his arrest on October 20, 2017. Summary judgment was granted to Defendants on July 27, 2020. *Id.* at Doc. 69. Gaddis appealed, and the appeal remains pending. Seventh Circuit Case No. 20-2424.

- **March 25, 2018** (Doc. 1, ¶¶45–57): The complaint alleges that on this date, Defendants Bryan DeMattei and Sam Ward, both of whom were Marion police officers, were standing outside of DeMattei's house while both were off duty (Doc. 1, ¶45). Gaddis drove up to DeMattei's home, parked in the driveway, got out of his car, and approached the two men (*Id.*). Gaddis alleges he planned to talk to DeMattei about a false statement DeMattei allegedly made about Gaddis (*Id.* at ¶46). Ward took Gaddis to the ground and restrained him, and then Ward and DeMattei called the police (*Id.* at ¶47). Williamson

---

[2] The dockets for all of Gaddis's state court civil and criminal cases can be viewed on Judici.com by going to https://www.judici.com/courts/cases/case_search.jsp?court=IL100025J, typing "Gaddis, Donald" into the "name" field, clicking "search," and then clicking on the relevant case number.

County deputy sheriff and Defendant Craig Oglesby (mistakenly named as William Oglesby in the complaint) responded and arrested Gaddis (*see id.* at ¶49). Gaddis was charged with felony trespass.

Gaddis alleges that Oglesby let DeMattei search his vehicle. DeMattei read the contents of a notebook in the car and then relayed information to Officer and Defendant William Lannom. Both DeMattei and Lannom applied for and were granted emergency orders of protection against Gaddis. Gaddis claims both orders violated his free speech rights in that they prohibited him from communicating to or about Lannom and DeMattei. Gaddis further alleges that at his preliminary hearing, Oglesby made false statements that Gaddis's car was not searched and no materials in the car were read.

- **Related Criminal Case:** Circuit Court of Williamson County, Case No. 2018-CF-178
  The Court takes judicial notices that the felony trespass charges against Gaddis remain pending and the case is set for trial on March 21, 2022.
- **Related Civil Case #1:** Circuit Court of Williamson County, Case No. 2018-OP-108
  The Court takes judicial notice that Lannom applied for and was granted an emergency order of protection against Gaddis on March 28, 2018. Gaddis alleges that the petition was dismissed at the plenary hearing for insufficient evidence (Doc. 1, ¶52). The state court docket, however, indicates the case was withdrawn on a motion by Lannom.
- **Related Civil Case #2:** Circuit Court of Williamson County, Case No. 2018-OP-109
  The Court takes judicial notice that DeMattei applied for and was granted an emergency order of protection against Gaddis on March 28, 2018. Following a hearing on April 18th, a plenary order was denied.
- **Related Civil Case #3:** Circuit Court of Williamson County, Case No. 2018-L-112; Illinois App. Ct., Fifth District, Case No. 05-20-0327
  The parties represent that Gaddis filed suit against Lannom in June 2018 for malicious prosecution related to the order of protection that he took out (Doc. 106-1; Doc. 106-2; Doc. 131-7). Summary judgment was entered in favor of Lannom on September 16, 2020 (Doc. 131-8). Gaddis appealed, and the judgment was affirmed on appeal (Doc. 131, p. 4). Specifically, the appellate court held that Gaddis could not demonstrate that Lannom lacked probable cause to file the underlying petition for an order of protection against him. *Gaddis v. Lannom*, 2021 WL 3033333 (July 19, 2021).
- **Related Civil Case #4:** SDIL Case No. 18-cv-1464-DWD
  The Court takes judicial notices that in August 2018, Gaddis sued DeMattei, Ward, Oglesby, and Jeffrey Moore (who is not a Defendant in the instant case)

for illegal search and seizure of his car and trespass. *Id.* at Doc. 1. The proceedings were stayed pending the resolution of the state court criminal case against Gaddis. *Id.* at Doc. 36. They remain stayed. *See id.* at Doc. 73.

- **Related Civil Case #5:** Circuit Court of Williamson County, Case No. 2020-L-36

  The parties represent that in March 2020, Gaddis filed a second lawsuit in Williamson County Court against DeMattei and Ward for battery and public disclosure of private facts related to the March 2018 incident (Doc. 131-5; Doc. 132, p. 5). The state court docket indicates the case was stayed in September 2020 pending resolution of Gaddis's civil suit in federal court, and it appears that the case remains stayed at this time.


- **June 29, 2018 Incident One** (Doc. 1, ¶¶107–111, 116):[3] Gaddis's neighbors (and Defendants), Dorothy McCombs and Brenda Grant, called the police on Gaddis after a verbal altercation with him. He was arrested by Marion police officers (and Defendants) Tom Stearns and Logan Spinka for violating an order of protection, despite his protestations there was no such order in place. It was later learned that the police computer system ("LEADS") did not reflect the dismissal of the order of protection (Doc. 132, p. 7). *See also* SDIL Case No. 18-cv-1437-SMY, Doc. 86. Gaddis was held for three hours and then released after it was determined that there was no order of protection in place (Doc. 1, ¶¶107–111, 116). Gaddis alleges that he would not have been arrested but for his criticisms of Williamson County officials.

  - **Related Civil Case #1:** SDIL Case No. 18-cv-1437-SMY

    The Court takes judicial notice that Gaddis filed suit in July 2018, in pertinent part, against Tom Stearns, Logan Spinka, Dorothy McCombs, and Brenda Grant for false arrest. *Id.* at Docs. 1, 20. Summary judgment was granted for Defendants on January 27, 2020. *Id.* at Doc. 86. Specifically, the judge determined that Stearns had probable cause to arrest Gaddis and McCombs and Grant could not be held liable for false arrest. *Id.* at Doc. 86, pp. 4–5. And Gaddis conceded that Spinka should be dismissed. *Id.* Gaddis did not appeal. *See id.*

  - **Related Civil Case #2:** SDIL Case No. 19-cv-652 consolidated with SDIL Case No. 20-cv-639

    The Court takes judicial notice that Gaddis filed suit against Williamson County and a number of individuals, alleging they failed to properly document

---

[3] In the complaint, Gaddis gives two different dates for this incident: June 29, *2018* and June 29, *2019* (Doc. 1, p. 16). Subsequent allegations regarding a state court criminal case (Doc. 1, ¶112), as well as, documents filed in related civil litigation demonstrate the incident occurred in 2018. *See* SDIL Case No. 18-cv-1437-SMY, Doc. 1 (case filed on July 24, 2018, alleging that Plaintiff was falsely arrested on June 29, 2018); SDIL Case No. 19-cv-653-SMY, Doc. 8 (amended complaint alleging Gaddis was arrested on June 29, 2018).

the dismissal of an order of protection, which directly resulted in Gaddis's false arrest. SDIL Case No. 19-cv-652, Docs. 1, 16, 29. Gaddis later filed another suit based on the same events, SDIL Case No. 20-cv-639, Doc. 1. The two cases were consolidated and then voluntarily dismissed in December 2020 at Gaddis's request. SDIL Case No. 19-cv-652, Docs. 41, 46.

- **June 29, 2018 Incident Two** (Doc. 1, ¶¶112–116):[4] Gaddis was arrested a second time on June 29, 2018 by Marion police officer Jason Watts after he blocked the exit of a person who was parked in his driveway.[5] Gaddis was charged with a felony. He contends that Watts did not have probable cause to believe he had committed a felony. Gaddis alleges that he would not have been arrested but for his criticisms of Williamson County officials.
  - **Related Criminal Case:** Circuit Court of Williamson County, Case No. 2018-CF-383
    The state court docket indicates that Gaddis was charged with felony unlawful restraint and misdemeanor disorderly conduct. It appears from the docket that the felony unlawful restraint charge was dismissed in August 2018, which is also what Gaddis claims (Doc. 132, p. 10). *See also* SDIL Case No. 19-cv-653-SMY, Doc. 8, ¶¶26–27; SDIL Case No. 19-cv-781-DWD, Doc. 1, ¶15. Gaddis also claims the misdemeanor disorderly conduct charge is based upon entirely different but event with a different victim but does not provide any further explanation or identify the event or the victim (Doc. 132, p. 10). A review of the state court docket shows the case is currently set for trial in April 2022.
  - **Related Civil Case #1:** SDIL Case No. 19-cv-653-SMY
    Gaddis filed suit against Officer Jason Watts, Kevin Hall (the man who parked in Gaddis's driveway), and his neighbors, Dorothy McCombs and Charles Winstead for false arrest. *Id.* at Doc. 8. Officer Watts moved to stay the case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), while the state criminal case against Gaddis remained pending. *Id.* at Doc. 66. The motion was denied and he filed an interlocutory appeal. *Id.* at Doc. 72, 73. Seventh Circuit Case No. 20-2723. The appeal remains pending, as does the civil case in the district court.
  - **Related Civil Case #2:** SDIL Case No. 19-cv-781-DWD
    Gaddis filed a four-count complaint against Williamson County State's Attorney and Defendant Brandon Zanotti. *Id.* at Docs. 1, 37. In Count 1, Gaddis

---

[4] As with Incident One, it is clear that Incident Two occurred on June 29, *2018*, not *2019*.

[5] In the body of the complaint, Plaintiff refers to Jason Watts as a Defendant (Doc. 1, ¶¶112, 114). However, Watts is not listed as a Defendant in the caption of the complaint, (*see* Doc. 1, p. 1), nor is he listed in the section of the complaint titled "The Parties," (*see* Doc. 1, pp. 2–4), no summons was ever issued for him (*see* Docs. 23, 61, 62), and he was never served and has never appeared in this case. To be clear, Watts is not currently a Defendant in this case.

alleges when he was arrested on June 29, 2018 and November 30, 2018, his right to bail was conditioned on submitting to a mental health evaluation. *Id.* In Count 2, Gaddis alleges that Zanotti or members of his office retaliated against him for criticizing local government officials by filing approximately ten criminal or traffic cases against him, requesting bench warrants for his arrest, and assisting individuals in filing for orders of protection against him. *Id.* In Count 3, Gaddis alleges he was denied his constitutional right to bail when he was arrested twice on the same misdemeanor warrant in April 2019. *Id.* In Count 4, Gaddis alleges that Zanotti has an ongoing conflict of interest with respect to criminal cases against him and asks the Court to issue an injunction barring Zanotti from participating in any manner in the prosecution of Gaddis in any alleged crimes in the future.

The action was stayed in its entirety, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), pending the outcome of various state criminal charges against Gaddis. *Id.* at Doc. 37. Additionally, Gaddis's request to consolidate case 19-cv-781 with the instant case was denied. *Id.* at Doc. 47.

- **November 20, 2018** (Doc. 1, ¶¶58–68): Gaddis was involved in a verbal altercation at Casey's General Store with Defendant John Fleming, a Marion police officer who was off-duty at the time. Following the incident, Fleming went to the Johnston City Police Department (presumably to file a police report) and "caused Gaddis to be arrested for aggravated assault." Gaddis was charged with a felony in Williamson County Court. Gaddis alleges that at the preliminary hearing in the criminal case, Fleming made false statements. He further alleges that at the request of the deputy state's attorney at the bond hearing, Judge Lewis conditioned his release on bond on Gaddis submitting to a mental evaluation. The criminal charges were dismissed on September 22, 2020. Gaddis alleges that he would not have been arrested and prosecuted but for his criticisms of Williamson County officials.
  - **Related Criminal Case:** Circuit Court of Williamson County, Case No. 2018-CF-685
    The state court docket indicates that Gaddis was charged with felony aggravated assault on a peace officer. The charges were dismissed on September 22, 2020.
  - **Related Civil Case #1:** Circuit Court of Williamson County, Case No. 2020-L-159
    Gaddis indicates that he filed suit against Fleming, but do not describe the nature of the claims (Doc. 132, pp. 7–8). The case was stayed at Gaddis's request because he has other cases pending in federal court and he anticipates voluntarily dismissing the state case (*Id.*).
  - **Related Civil Case #2:** SDIL Case No. 19-cv-781-DWD. *See supra* pp. 8–9.

- **February 14, 2019** (Doc. 1, ¶¶ 69–76, 145–54): Plain-clothes officer and Defendant Justin Dwyer "chased [Gaddis] into his garage" and then Officer and Defendant Jesse Thompson pulled Gaddis out of his vehicle and took him to the ground. Officer Dwyer said Gaddis failed to use his turn signal as the grounds for pursuing him. Gaddis was charged with an unspecified misdemeanor. Gaddis alleges that he would not have been arrested and prosecuted but for his criticisms of Williamson County officials.

  - **Related Criminal Case:** Circuit Court of Williamson County, Case No. 2019-CM-62

    It is not entirely clear what charge(s) Gaddis is facing in this case. The complaint indicates Gaddis was charged with an unspecified misdemeanor (Doc. 1, ¶¶70, 146). In his brief in response to one of the motions to dismiss, Gaddis says "the charge was failure to signal" (Doc. 118, p. 4). But then in his brief in response to the motion to stay, Gaddis said he was charged with a misdemeanor for eluding a police officer (Doc. 132, p. 9). He then said that charge was dismissed and he was charged with resisting arrest (*Id.*; *see also* Doc. 1, ¶149). Based on the Court's review of the state court records, it appears the case is proceeding on one count of resisting a peace officer. There is also no indication from the state court records that Gaddis was ever ticketed for failure to use his turn signal. Whatever the charge is, the case is still pending and is set for trial in April 2022.

  - **Related Civil Case #1:** SDIL Case No. 19-cv-781-DWD.

    Gaddis alleges that the above-mentioned criminal case was one of Brandon Zanotti's acts of retaliation against Gaddis for criticizing government officials SDIL Case No. 19-cv-781-DWD, Doc. 1, p. 10; *see also supra* pp. 8–9.

  - **Count 2:** Gaddis brings a claim for false arrest against Officers Dwyer and Thompson related to this incident.

- **March 13, 2019** (Doc. 1, ¶¶77–81): Gaddis called the police because someone threw nails on his driveway. His neighbors Dorothy McCombs and Charles Winstead came out of their houses to watch Gaddis's interaction with the police. Gaddis asked them if they threw the nails. He was then arrested for talking to McCombs in violation of the order of protection against him. (He does not identify the arresting officer.) State's Attorney and Defendant Brandon Zanotti filed criminal charges against Gaddis. Gaddis alleges that he would not have been arrested and prosecuted but for his criticisms of Williamson County officials.

  - **Related Criminal Case:** Circuit Court of Williamson County, Case No. 2019-CM-96

    The state court docket indicates Gaddis was charged with violating an order of protection. Gaddis represents that his motion to dismiss the charges was denied and he was granted the right to assert as an affirmative defense that the

charges violate his constitutional rights (Doc. 132, p. 10). The docket shows this case is currently set for trial in April 2022.

- **Related Civil Case #1:** SDIL Case No. 19-cv-781-DWD

  Gaddis alleges that the above-mentioned prosecution was one of Brandon Zanotti's acts of retaliation against Gaddis for criticizing government officials. *See supra* pp. 8–9.

- **April 9–10, 2019** (Doc. 1, ¶¶82–93): Gaddis was arrested on April 9th for violating an order of protection. He was held for two hours and then released after posting bond. The following day, he was re-arrested a second time for the same thing by Officer William Huddleston. Gaddis alleges that Huddleston knew Gaddis was being arrested for a second time but that the supporting documentation for his first arrest had not been entered into the LEADS system. Gaddis alleges that he was held for four hours, aggressively searched, and subjected to a variety of other objectionable conditions. Gaddis alleges that he would not have been arrested but for his criticisms of Williamson County officials.

  - **Related Criminal Case:** The parties do not indicate that any criminal charges were ever filed against Gaddis. The Court's own review of the Williamson County Court records reveals a criminal case that might correspond with this incident. In 2019-CM-128, Gaddis was charged with violating an order of protection on April 9, 2019, amongst other things. The docket indicates this case is currently set for trial in April 2022.

  - **Related Civil Case:** SDIL Case No. 19-cv-781-DWD

    This incident was the subject of Count 3 in this case against Brandon Zanotti, which was dismissed as barred by the Eleventh Amendment and by prosecutorial immunity. *Id.* at Doc. 37. *See also supra* pp. 8–9.

- **June 7, 2019** (Doc. 1, ¶¶94–100): Gaddis alleges that a complaint was filed against him for violating city ordinance by placing signs on utility poles. He further alleges that other individuals regularly used utility poles to post signs. Gaddis believes he is the only individual who has been prosecuted for posting signs on utility poles. He alleges that the complaint would not have been filed had the posted signs not criticized Williamson County officials. The complaint was dismissed after Gaddis retained an attorney and filed an answer.

  - The parties do not indicate that there are any related proceedings pending. However, the Court's own review of the Williamson County Court records reveals a pending case that might correspond with this incident. In 2019-OV-76, Gaddis was charged with an ordinance violation for posting signs to a utility pole. It appears the city's motion to dismiss the case nolle prosequi in July 2020 was granted.

- **June 18, 2019** (Doc. 1, ¶¶101–106): Gaddis was arrested by Officer and Defendant John Fleming and Officer Bennie Vick while parked near the courthouse. Gaddis alleges that he would not have been arrested but for his criticisms of Williamson County officials. Gaddis asserts that he did not violate any ordinance, rule, or regulation in parking where he did and that no charges were ever filed against him stemming from this arrest (Doc. 132, p. 11).
  - **Count 3 –** Gaddis brings a false arrest claim against Fleming related to this incident (Doc. 1, p. 24).[6]

- **July 9, 2019** (Doc. 1, ¶¶117–125): Williamson County Judge, Brad Bleyer (who is not a Defendant in this case), entered an administrative order prohibiting Gaddis from parking within 300 feet of the Williamson County Courthouse.[7] Gaddis alleges the order was entered without prior notice to him or a hearing. As a result of the order, his car was seized and impounded. Gaddis further alleges that three months prior, he had a verbal exchange with Judge Bleyer while he was demonstrating across from the courthouse and Bleyer said he should cross the street and "kick [Gaddis's] ass." Gaddis alleges that Judge Bleyer would not have threatened him or issued the administrative order but for his criticisms of Williamson County officials.
  - **Related Civil Case:** SDIL Case No. 19-cv-1334-SPM
    Gaddis brought due process claims against Judge Bleyer related to the entry of the administrative order and the impoundment of his car. *Id.* at Doc. 1. Judge Bleyer's motion to dismiss was granted and Gaddis's claims were dismissed with prejudice for failure to state a claim. *Id.* at Doc. 29. Gaddis did not appeal.

- **January 9, 2020** (Doc. 1, ¶¶126–129): Felony charges were filed against Gaddis for assaulting a courthouse deputy on January 9, 2020. Gaddis alleges that during the preliminary hearing on the charges, Officer and Defendant John Fleming falsely testified he saw Gaddis engage in a threatening gesture. Gaddis further alleges that after video of the event was played, Fleming had to recant his testimony. Gaddis alleges he would not have been arrested but for his criticisms of Williamson County officials.
  - **Related Criminal Case:** Circuit Court of Williamson County, Case No. 2020-CF-23

---

[6] The complaint indicates that Count 3 is against Fleming *and* Vick (Doc. 1, p. 24). However, Vick is not listed as a Defendant in the caption of the complaint, (*see* Doc. 1, p. 1), nor is he listed in the section of the complaint titled "The Parties," (*see* Doc. 1, pp. 2–4), no summons was ever issued for him (*see* Docs. 23, 61, 62), and he was never served and has never appeared in this case. To be clear, Vick is not currently a Defendant in this case.

[7] The administrative order can be found at Doc. 1-1 in SDIL Case No. 19-cv-1334-SPM.

Despite Gaddis's allegations that Fleming had to recant his testimony (Doc. 1, ¶128), the docket in the criminal case indicates that probable cause was nevertheless found and the charges were allowed to move forward. But the charges were then dismissed in September 2020 because the prosecutor failed to comply with Illinois law as to the appointment of a special prosecutor (*see also* Doc. 1, ¶163).

- **Count 4 –** Gaddis asserts a false arrest claim against Officer Fleming related to this incident.

- **May 5, 2020** (Doc. 1, ¶¶130–142): Circuit Clerk and Defendant Andrew Wilson issued a summons and served Gaddis with an order of protection pertaining to Defendant Jennifer Page, a court reporter at the Williamson County courthouse. Gaddis alleges that State's Attorney and Defendant Brandon Zanotti and Defendant Betty Caraway helped procure the Order by getting the forms from Wilson's office and helping Page fill them out. (*See also* Doc. 132-2—the petition for Stalking No Contact Order). Gaddis claims the order of protection violated his free speech rights in that it prohibited him from communicating to or about Page. He further claims he would not have been required to respond to the order of protection proceedings but for his criticisms of Williamson County officials.

  - **Related Civil Case #1:** Circuit Court of Williamson County, Case No. 2020-OP-140; Illinois App. Ct., Fifth District, Case No. 5-20-0231
    The court issued an emergency order of protection on May 5, 2020. The court later agreed with Gaddis that any portion of the emergency order which enjoined him from "communicating to or about" the petitioner would be void and should be vacated as to those words only, but all other terms of the emergency order remained valid. Additionally, a two-year plenary order of protection was issued after the judge found at least two incidents of Gaddis stalking Page. Gaddis appealed the order. Illinois App. Ct., Fifth District, Case No. 5-20-0231 (*see* Doc. 113, pp 3–4 n.1). After the parties' briefing was submitted in instant case, the Fifth District Court of Appeals affirmed the issuance of the order of protection. *Page v. Gaddis*, 2021 WL 5881906 (Dec. 10, 2021).

  - **Related Civil Case #2:** Circuit Court of Williamson County, Case No. 2020-L-73; Illinois Appellate case number 5-21-0139
    Gaddis sued Brandon Zanotti and Andrew Wilson because they used forms that the Illinois legislature and Illinois courts have previously determined contained unconstitutional language (Doc. 1, ¶143; Doc. 113-4; Doc. 131-28; Doc. 132, p. 8). The claims were dismissed (Doc. 113-3). Gaddis appealed and the appeal apparently remains pending (*see* Doc. 113, p. 18 n.3).

- **Related Criminal Case:** Circuit Court of Williamson County, Case No. 2021-CM-266
  Gaddis was charged with violating the order of protection after having contact with Jennifer Page (Doc. 131; Doc. 131-24). The state court docket indicates that Gaddis's initial appearance has been continued to April 2022.

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *E.g., Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020). However, "legal conclusions and conclusory allegations . . . are not entitled to this presumption of truth." *Dix*, 978 F.3d at 513 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S, 555, 557 (2007)). "[W]hile a complaint does not need 'detailed factual allegations' to survive a 12(b)(6) motion to dismiss, it must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" *Dix*, 978 F.3d at 512–13 (quoting *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014)). Making the determination of plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

## DISCUSSION

The Court first looks at Defendants Dwyer and Thompson's motion to dismiss the

false arrest claim in Count 2 and then turns to the arguments made by Defendants as to the conspiracy claim in Count 1.

## I.   COUNT 2 – FALSE ARREST

Count 2 is a claim for false arrest arising out of the February 14, 2019, incident where Officers Jesse Thompson and Justin Dwyer arrested Gaddis in his garage (Doc. 1, ¶¶69–76, 145–154; *see supra* p. 10). Defendants argue the complaint does not contain facts sufficient to state a plausible claim because Gaddis makes the unadorned assertion that they "did not have probable cause to arrest him" but he did not specify what specific offense he was charged with, let alone describe the surrounding facts and circumstances (Doc. 109, p. 8).

"To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest. *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). The question for the Court therefore is whether Gaddis has adequately pleaded a lack of probable cause. *Neita*, 830 F.3d at 497. "An officer has probable cause to arrest if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita*, 830 F.3d at 497 (citation omitted). *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) ("Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant."). A police officer's probable cause determination "depends on the elements of the underlying criminal

offense." *Neita*, 830 F.3d at 497 (citation omitted). "[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007).

At this point, the Court agrees that Gaddis has failed to adequately plead a lack of probable cause, primarily because it is not clear what the underlying criminal offense was or what the facts and circumstances of the arrest were. Gaddis alleges that he was driving in his neighborhood when Officer Dwyer chased him into his garage (Doc. 1, ¶¶69–71, 145–47). Officer Thompson then entered the garage, pulled Gaddis out of his vehicle, took him to the ground, and arrested him (*Id.*). Gaddis argues he was charged with failure to signal, and this type of minor traffic violation is not the type of offense that should ever give rise to an arrest, even if probable cause is present (Doc. 118, p. 4; *see also* Doc. 1, ¶¶70, 146 (alleging Officer Dwyer told him the police were pursuing him because he failed to use his turn signal)). Gaddis further argues that the arrest was made inside his "living area" because his "garage also serves as his dwelling," and therefore a warrantless entry and arrest requires exigent circumstances and none existed (Doc. 118, pp. 4–5).

Elsewhere, however, Gaddis provides additional information about the incident. He says the police were annoyed that he drove his car through their parking lot, so Officer Dwyer attempted to pull him over for failing to use his turn signal (Doc. 132, p. 9). According to Gaddis, he was arrested for eluding a law enforcement officer, (*Id.*), not just failing to use his turn signal, as he previously claimed. Gaddis further claims the charge for eluding a law enforcement officer was dismissed and new charges for resisting arrest

were filed (*Id.*). It appears from the state court docket that the case is proceeding on one count of resisting a peace officer.

As previously mentioned, Gaddis makes the bald assertion that Officers Dwyer and Thompson "did not have probable cause to arrest him" (Doc. 1, ¶152). The federal pleadings standard, however, demands more than "legal conclusions" and "naked assertions devoid of further factual enhancement" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). Taken together, all of the information suggests that Officer Dwyer pursued Gaddis with the intent to pull him over for failing to use his turn signal, but Gaddis did not pull over and Officer Dwyer followed him all the way to his house and into his garage, where he arrested him (*see* Doc. 1, ¶¶69–76, 145–154). It seems as though Officers Dwyer and Thompson *did* have probable cause to arrest Gaddis for evading an officer and/or resisting arrest. He says nothing that would allow the Court to reach the opposite conclusion. For example, he makes no allegations about the facts and circumstances known to Officers Dwyer and Thompson at the time they arrested him and omits any details that would allow the Court to infer that he did not fail to use his turn signal or fail to pull over (*see* Doc. 1).

Consequently, Count 2 for false arrest is dismissed for failure to properly plead lack of probable case. The dismissal is without prejudice and Gaddis will be given an opportunity to amend his complaint. However, the Court notes that even if Gaddis successfully repleads this claim, the Court will likely stay litigation of the claim pursuant

to *Younger v. Harris*, 401 U.S. 37 (1971) in order to avoid interfering with the state court criminal proceedings. Under *Younger*, federal courts are required to abstain from taking jurisdiction over federal constitutional claims when "there is an ongoing state proceeding that is judicial in nature, involves important state interests, provides the plaintiff an adequate opportunity to raise the federal claims, and no exceptional circumstances exist." *Ewell v. Toney*, 853 F.3d 911, 916 (7th Cir. 2017) (citing *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007)). Specifically, the *Younger* abstention doctrine, requires federal courts to refrain from "intru[ding] into ongoing state criminal prosecutions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citation omitted).

In Count 2, Gaddis is attacking the legality of his arrest on February 14, 2019, asserting the police had no probable cause to arrest him. This is a constitutional issue that may also be litigated in the underlying state court criminal case. (In fact, the Court suspects that it *has* been litigated given that the state court docket reflects that Gaddis filed a motion to quash and a number of motions to dismiss.). A finding in the present case that Gaddis's arrest was unconstitutional would necessarily interfere with the state criminal proceedings. *Younger* abstention is therefore appropriate while the criminal case works its way through the state courts. In this instance, because Gaddis is seeking monetary damages for Count 2—relief that is unavailable from his pending state court criminal proceedings—the claim would be stayed rather than dismissed. *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995).

## II.   <u>COUNT 1 – CIVIL CONSPIRACY</u>

"A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citation and internal quotations marks omitted). "[T]he conspirators must act with a single plan, the general nature and scope of which is known to each would-be conspirator." *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999). To prevail on a § 1983 conspiracy claim, the plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (citing *Beaman*, 776 F.3d at 510). In other words, the plaintiff "must 'show an underlying constitutional violation' and 'demonstrate that the defendants agreed to inflict the constitutional harm.'" *Daugherty*, 906 F.3d at 612 (citing *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018)). *See also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("[I]t remains essential to show that a particular defendant joined the conspiracy and knew of its scope.")

As Defendants note (*e.g.*, Doc. 99, p. 2), Gaddis's allegations as to the nature of the underlying constitutional violation are somewhat confusing. On the one hand, Gaddis asserts that the underlying constitutional violation was First Amendment retaliation. He specifically alleged that the Defendants "reached an agreement . . . to retaliate against [him] because of his decision to exercise [h]is constitutional rights," meaning his decision to speak out about the perceived corruption of local government officials (Doc. 1, ¶37). The retaliation took the form of a number of "tortious acts," (Doc. 1, pp. 6–21), in which

Gaddis claims he was arrested and/or prosecuted by Defendants without probable cause or justification, (*e.g.,* Doc. 115, pp. 3–4).

On the other hand, Gaddis includes allegations suggesting that some of the "tortious acts" violated his constitutional rights for other reasons independent of retaliation. For example, he alleges that the orders of protection obtained against him violated his right to freedom of speech in that they prohibited him from communicating to or about the petitioners (Doc. 1, ¶¶39, 53, 135). It is not clear if Gaddis is attempting to allege that the orders of protection were sought not only as part of the conspiracy to retaliate against him for criticizing local government officials, but also as part of a separate conspiracy to violate his free speech rights. In other words, a conspiracy amongst a few individuals within the larger, overarching conspiracy amongst all Defendants to retaliate. The Court notes that Gaddis was represented by counsel when he filed his complaint and is therefore not entitled to the same generous interpretation afforded to *pro se* litigants. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (pro se complaints are construed "liberally" and held "to a less stringent standard than formal pleadings drafted by lawyers."). For that reason, the Court will rely on Gaddis's explicit allegations and will not attempt to read between the lines. The Court thus understands Gaddis's claim in Count 1 to be that Defendants conspired to retaliate against him because he criticized local government officials, meaning the underlying constitutional violation was First Amendment retaliation. To the extent Gaddis claims the "tortious acts" violated his constitutional rights for reasons independent of retaliation, (*e.g.,* the orders of protection violated his right to free speech), the Court views those allegations

as an effort by Gaddis to demonstrate that he "suffered a deprivation that would likely deter First Amendment activity in the future" (*see* Doc. 1, ¶144). *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

In order to show that he was subject to retaliation in violation of his First Amendment rights, Gaddis must allege facts suggesting that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

### A.  FAILURE TO STATE A CLAIM

The moving Defendants all argue that, generally speaking, Gaddis failed to state a claim for conspiracy to retaliate against him (Docs. 95, 97, 99, 101, 103, 105, 107, 109, 111, 113). Some Defendants also make more specific arguments that Gaddis failed to state a claim as to them individually in regard to particular incidents. The Court believes it makes the most sense to first address the general argument and then look at the more specific arguments, as necessary.

Defendants contend that Gaddis failed to state a claim because none of the "tortious acts" outlined in the complaint are related in any kind of logical way that plausibly suggests they were the product of a conspiracy (*e.g.,* Doc. 99, pp. 4–7). Rather, the events that comprised the purported conspiracy were disconnected, distinct incidents involving different parties (*e.g., id.*). The Court agrees that Gaddis's allegations do not

plausibly suggest a conspiracy. Gaddis has baldly alleged a wide-ranging conspiracy against various categories of unrelated defendants for purported wrongs that do not appear to be connected.

In pleading a conspiracy claim under § 1983, the plaintiff is not required to detail the specifics of the agreement among the alleged conspirators. In fact, that is not the kind of information that a plaintiff can be expected to have at the time they file their complaint. However, the complaint must include more than a generalized, conclusory allegation of conspiracy. *See Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011); *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (Neither "a bare allegation of conspiracy," nor "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her" is enough to survive a motion to dismiss for failure to state a claim). The complaint must allege facts that collectively give rise to a "plausible account of conspiracy" or reasonable inference of "improper complicity" by the defendants. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012); *Redd*, 663 F.3d at 292. The question is "[s]tripped of legal conclusions, does the complaint contain "enough factual matter (taken as true) to suggest that an agreement" to retaliate against Gaddis was made. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 827 (7th Cir. 2019) (parenthetical in original).

Here, the answer is no. Although Gaddis has identified a basic time frame and a conspiratorial purpose, his allegations do not establish a pattern of clearly related conduct that suggests the existence of an agreement or understanding between the Defendants to deny him his constitutional rights. To begin with, there were various categories of people—both private citizens and public officials—allegedly involved in the

purported conspiracy. Gaddis asserts that some of his neighbors, Marion police, Williamson County sheriff's deputies, state court judges, the elected Circuit Clerk, the elected State's Attorney and a victim advocate from his office, and other courthouse employees, including a court reporter, were all in cahoots together. There is no obvious connection between many of these people. And it is also not apparent why some of them would have any interest at all in retaliating against Gaddis for criticizing public officials.

Additionally, not all of the conduct at issue is clearly related or clearly aimed at achieving a collective and illegal goal. In fact, there appears to be a reasonable explanation for many of the incidents Gaddis labels as "tortious acts." For example, it has already been adjudicated that a number of his arrests were legitimate and probable cause existed for the arrests. As additional examples, Dorothy McCombs sought an order of protection against Plaintiff in October 2017 following a dispute with him. And Bryan DeMattei called the police on Plaintiff in March 2018 after Plaintiff randomly showed up at his home to confront him. These two events, which occurred five months apart, have no obvious connection to one another. Rather, it appears McCombs's actions and DeMattei's actions were taken completely independently of one another and had nothing to do with Gaddis's criticism of public officials but rather were based on Gaddis's purportedly threatening behavior toward each of them. *But see Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) (finding it "a challenge to imagine a scenario" in which the harassment the plaintiff faced "would not have been the product of a conspiracy" where the plaintiff alleged that officers from the same police unit wrote him 24 bogus parking tickets over the course of fourteen months).

Simply put, Gaddis is trying to lump together the actions of everyone he feels has wronged him. But his complaint contains nothing more than his own vague and conclusory, if not paranoid, allegations that a conspiracy existed. There is no sufficient factual development to create plausibility consistent with "judicial experience and common sense" that dozens of individuals, many with no apparent connection to one another, were leagued in a conspiracy over the course of several years to get back at Gaddis for speaking out against government officials. *Iqbal*, 556 U.S. at 679.

For these reasons, Gaddis's conspiracy claim (Count 1) is dismissed for failure to state a claim as to all Defendants. Ordinarily, such a dismissal would be without prejudice and with leave to amend. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1008 (7th Cir. 2019) (citation omitted). However, there are alternative reasons that the dismissal should be *with prejudice* as to *some Defendants*, which are discussed below.

## B. OCTOBER 24, 2017 INCIDENT (Doc. 1, ¶¶ 38–44)

To recap, on October 20, 2017, Gaddis was involved in a dispute with his neighbors, including Defendant Dorothy McCombs. The police were called and Gaddis was arrested for disorderly conduct by Defendants Bryan DeMattei, William Lannom, and Logan Spinka. On October 24th, at the urging of Defendant Mary Griffith, McCombs applied for and was granted an order of protection against Gaddis.

There are multiple reasons that dismissal of Gaddis's claim based on the above incident is warranted. First, it is barred by the statute of limitations (*see* Docs. 99, 103, 107). While the statute of limitations is an affirmative defense that cannot normally be

decided on a Rule 12(b)(6) motion to dismiss, the complaint is nevertheless subject to dismissal for failure to state a claim when the allegations of the complaint reveal that the claim is "indisputably time-barred." *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016); *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). "[T]he limitations period applicable to *all* § 1983 claims brought in Illinois is two years." *Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 768 (7th Cir. 2013); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) (applying a two-year statute of limitations to §1983 conspiracy claim). For a conspiracy claim, the statute of limitations begins to run from each overt act that is alleged to cause damage to the plaintiff, as opposed to commencing as to the entire conspiracy upon the occurrence of the last act in furtherance of the conspiracy. *Scherer v. Balkema*, 840 F.2d 437, 439–40 (7th Cir. 1988) (citing *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986)). Consequently, a plaintiff can only recover damages for overt acts alleged to have occurred within the applicable limitations period. *Geinosky*, 675 F.3d at 749; *Scherer*, 840 F.2d at 440.

Here, Gaddis filed this lawsuit on February 13, 2021 (Doc. 1). Therefore, he cannot recover damages for any overt acts that occurred prior to February 13, 2019. That means any claim for damages stemming from his arrest on October 20, 2017 and subsequent related conduct by Defendants must be dismissed as time-barred.

Second, Gaddis's allegations affirmatively demonstrate this incident was not part of the purported conspiracy. In particular, Gaddis does not specifically allege that Defendants' conduct was retaliatory, or that he would not have been arrested or subjected to the order of protection proceedings but for his speech criticizing Williamson County

officials that was the impetus for the conspiracy (*see* Doc. 1). Nor could he because his speech did not occur until after Defendants' alleged conduct. Gaddis explicitly alleged that he began speaking out about Williamson County officials on October 28th (Doc. 1, ¶29). But his arrest, Officer Griffith's conduct, and McCombs's application for an order of protection all occurred prior to that. Given the timing of the events, the Court cannot plausibly infer that Gaddis's speech motivated any of the Defendants' actions because his speech had not yet occurred.

Additionally, Gaddis specifically alleged Defendants did not become aware of his "constitutionally protected activities" until November 1, 2017, and the conspiracy began sometime thereafter (Doc. 1, ¶¶30, 37). He later reiterated this timeline in his briefing (*e.g.*, Doc. 123, p. 5). The Court therefore cannot plausibly infer that any of the Defendants' actions were taken in furtherance of the alleged conspiracy at hand because the conspiracy had not yet begun.

For these reasons, the dismissal of Count 1 with respect to this incident is with prejudice. Because this is the only incident in which Officer Griffith was involved (*see* Doc. 1), she is therefore entitled to outright dismissal with prejudice from this action.

## C.  MARCH 25, 2018 INCIDENT (Doc. 1, ¶¶45–57)

According to the complaint, Gaddis stopped at Bryan DeMattei's house, and DeMattei and Sam Ward called the police. Gaddis was arrested by deputy sheriff Craig Oglesby and charged with felony trespass. DeMattei then searched Gaddis's car, and based on what he found, he and William Lannom applied for orders of protection against Gaddis. During the preliminary hearing on the criminal charges, Deputy Oglesby

allegedly made a number of false statements.

The Court first notes Defendants did not argue that Gaddis's claim based on *this incident* was time-barred (*see* Doc. 103, 105, 107). Therefore, the Court will not address the issue. Rather, Defendants say that Gaddis's claims against them should be dismissed because they are duplicative of a prior suit and/or constitute improper claim-splitting (*Id.*).

The rule against duplicative litigation, the rule against claim splitting, and res judicata are distinct, yet related and overlapping doctrines. *See Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. Nov. 23, 2021) ("'Claim splitting in duplicative lawsuits' is a subset of the res judicata doctrine." (quoting *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011))); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or *res judicata.*"). While res judicata was not argued by DeMattei, Ward, and Lannom with respect to this incident (*see* Doc. 103, 105, 107), the Court believes it is applicable at least as to Lannom, and it also comes into play with respect to later incidents. It therefore makes sense to discuss it now in combination with duplicative litigation and claim splitting.

As a general rule, "a district court has 'significant latitude' and 'broad discretion to dismiss a complaint for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Scholz*, 18 F.4th at 951 (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888 (7th Cir. 2012)). *Curtis*, 226 F.3d at 138 (citing *Colorado River*, 424 U.S. at 817 ("As between federal district courts,

. . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.")). "A suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Scholz*, 18 F.4th at 951 (quoting *McReynolds*, 694 F.3d at 889).

Similarly, "[t]he rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (citation and internal quotation marks omitted). *See also Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012) (Alito, J., dissenting) ("Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary 'to avoid duplicative litigation.'" (citation omitted)). Simply put, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis*, 226 F.3d at 139. Claim-splitting occurs when a plaintiff brings a suit "arising from the same transaction or events underlying a previous suit, simply by a change of legal theory[.]" *Scholz*, 18 F.4th at 951 (quoting *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010)).

Res judicata is a broad term that encompasses both claim preclusion (sometimes itself called res judicata) and issue preclusion (sometimes called collateral estoppel). *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) (citing 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4402 (3d ed. 2016)). "A fundamental precept of common-law adjudication . . . is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction

. . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).

It is important to note that the rules against duplicative litigation and claim splitting are typically invoked in instances where the first suit is still proceeding when the second suit is filed, while res judicata can apply only after a judgment has been entered in the first suit. *See, e.g., Scholz*, 18 F.4th at 952.

### 1. Bryan DeMattei (Docs. 102, 103; *see also* Doc. 116)

Gaddis previously sued DeMattei, along with Officers Ward, Oglesby, and Jeffrey Moore (who is not a Defendant in the instant case), for illegal search and seizure of his car and trespass. SDIL Case No. 18-cv-1464-DWD, Doc. 1. The proceedings were stayed pending the resolution of the criminal charges against Gaddis in state court. *Id.* at Doc. 36.[8] Because the previous federal suit remains pending, the rules against duplicative litigation and claim splitting, not *res judicata*, are the appropriate doctrines to consider.

Claim splitting blocks a second lawsuit if there is an identity of the parties in the

---

[8] Plaintiff also filed a second suit against Ward and DeMattei in state court for battery in taking him to the ground and public disclosure of private facts for reading his notebook and sharing its content with Officer William Lannom (Doc. 131-5; Doc. 132, p. 5). *See* Circuit Court of Williamson Count, Illinois Case No. 2020-L-36. The second case was also stayed. The Court does not consider the effect of this case because the rules against duplicative litigation and claim splitting apply only as to cases proceeding concurrently in federal court. Whether a federal court case should proceed in light of an earlier filed state court case is an issue of abstention. *See* 17A FED. PRAC. & PROC. JURIS. § 4247 (3d ed.); *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (discussing *Colorado River* abstention). Because neither party discussed whether abstention was appropriate, (*see* Docs. 103, 105, 107; Docs. 116, 119, 121), the Court declines to address the issue.

two suits and an identity of the causes of action. *Scholz*, 18 F.4th at 951. Here, it is indisputable that an identity of the parties exists between the first federal suit and this suit— Gaddis sued Bryan DeMattei as a Defendant in both cases. The question is whether there is an identity between the causes of action in the two suits. Generally, there is an identity between causes of action if "the claims arise out of the same set of operative facts or the same transaction." *Scholz*, 18 F.4th at 952 (citing *Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011)). "This 'transactional' inquiry focuses on whether the claims comprise the same core of operative facts that give rise to a remedy." *Matrix IV*, 649 F.3d at 547 (citation and internal quotation marks omitted). "Even if the two claims are based on different legal theories, the two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* (citation and internal quotation marks omitted). *Accord Scholz*, 18 F.4th at 952 ("[T]he legal theories for the claims in each case need not be the same provided they are based on the same, or nearly the same, factual allegations."); *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017) ("Two causes of action are identical if each claim is supported by the same factual allegations, and the judgment in each case would be based on the same evidence.") (citations omitted).

Officer DeMattei argues that the allegations against him in the previous case and the present case all arise out of the March 25, 2018 incident where Gaddis trespassed on DeMattei's property and was subsequently arrested, and therefore the suits are duplicative (Doc. 103, pp. 8–10). DeMattei argues that Gaddis has to assert all of his claims based on these events against DeMattei in a single cause of action (*Id.*). Therefore, if

Gaddis wants to bring another claim against DeMattei based on a new legal theory, he should amend his complaint in the first suit (*Id.*). DeMattei believes Gaddis instead chose to file a new lawsuit and attack DeMattei's actions as part of a conspiracy in an effort to avoid the stay in his earlier federal suit (*Id.*).

Gaddis contends, however, that his claims in this case are not duplicative of those in the previous suit (Doc. 116, pp. 4–6). He acknowledges there are shared facts between the two suits, but asserts those facts are alleged here "simply to show acts in furtherance of the conspiracy and to demonstrate the conspiracy itself" (*Id.*). He argues the conspiracy claim is distinct and, in fact, he did not know of any conspiracy in 2018 when he filed the previous suit or have reason to believe one existed (*Id.*).

Gaddis's arguments are unavailing. The claims against DeMattei in the first federal suit and in the present suit both arise out of Gaddis's arrest on March 25, 2018 and subsequent related events. In the first case, Gaddis asserts that DeMattei acted illegally that day by searching his car without a warrant or probable cause to do so. SDIL Case No. 18-cv-1464-DWD, Doc. 1. Here, Gaddis once again takes issue with the search, and seemingly with the fact that DeMattei called the police on Gaddis, shared information about what he found in Gaddis's car with William Lannom, and filed for a protective order against Gaddis (*see* Doc 1). Regardless, the underlying transaction that gave rise to all of the claims in both of Gaddis's suits was his detention and arrest on March 25, 2018. *See, e.g., Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (holding that claim preclusion applied because the plaintiff's allegations in prior lawsuit that officers conducted an illegal search and used excessive force during his 2009 arrest and his

allegations in present lawsuit that officers planted evidence and falsified a citation "arose out of the same transaction"—his 2009 arrest). Gaddis "was obliged to . . . raise all claims that stem from the same transaction or series of related transactions" against DeMattei in the first lawsuit. *Scholz*, 18 F.4th at 953 (citation omitted). His attempt to now bring claims resting on the same event and same conduct in the present case is "a quintessential example of claim splitting in duplicative lawsuits." *Id.*

Furthermore, at the time Gaddis filed the present suit in February 2021, it is clear that he could not have brought a stand-alone claim for retaliation against DeMattei. Not only would such a claim have been time-barred, but it would have indisputably violated the rule against claim splitting. That is, Gaddis would be trying to maintain two federal lawsuits against DeMattei based on the exact same series of events that began with his detention and arrest on March 25, 2018, by simply asserting a right to relief based on different legal theories. The fact that Gaddis did not assert a stand-alone claim for retaliation but instead cast his claim against DeMattei as part of a continuing civil conspiracy should not result in a different outcome. *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) ("[A] plaintiff cannot use a theory of a continuing civil conspiracy to recover for individual overt acts that would themselves be time-barred . . . .") (citing *Scherer v. Balkema*, 840 F.2d 437, 440 (7th Cir. 1988)).

In conclusion, Gaddis's allegations concerning this incident with respect to Bryan DeMattei are barred by the rule against claim-splitting. Because neither of the incidents involving DeMattei—the October 24, 2017 incident and the March 25, 2018 incident—can serve as a basis for Gaddis's conspiracy claim, DeMattei is entitled to outright dismissal

with prejudice from this action.

### 2.  **Sam Ward** (Docs. 104, 105; *see also* Doc. 121)

For the same reasons discussed above with respect to Officer DeMattei, Gaddis's claim against Officer Ward is blocked by the rule against claim splitting. In short, Gaddis previously filed a federal suit against Ward based on Ward's involvement in the events of March 25, 2018. *See* SDIL Case No. 18-cv-1464-DWD. Gaddis cannot maintain a second, overlapping suit against Ward based on the same incident by simply asserting a right to relief under a different legal theory.

Because this is the only incident in which Officer Ward was involved (*see* Doc. 1), he is therefore entitled to outright dismissal with prejudice from this action.

### 3.  **Craig Oglesby**

Although Craig Oglesby did not file a motion to dismiss, it is clear the same claim-splitting analysis applies to his conduct on March 25, 2018. Gaddis previously filed a federal suit against Oglesby based on Oglesby's involvement in the events of March 25, 2018. *See* SDIL Case No. 18-cv-1464-DWD. Gaddis cannot maintain a second, overlapping suit against Oglesby based on that same conduct. It is less clear, however, whether Gaddis should also be barred from challenging Oglesby's purported false testimony months later at the preliminary hearing on the trespass charges. Because the parties have not briefed this specific issue, the Court will allow Plaintiff to reassert this aspect of his claim against Oglesby if he chooses to file an amended complaint.

### 4.  **William Lannom** (Docs. 106, 107; *see also* 119)

Officer Lannom argues that Gaddis's claim is duplicative of a prior suit and/or

constitutes improper claim-splitting (Doc. 107, pp. 7–9). Specifically, Gaddis previously sued Lannom in Williamson County Court for malicious prosecution related to the order of protection (Doc. 131-7). *See* Circuit Court of Williamson County, Case No. 2018-L-112. Final judgment on the merits was entered in the first suit in September 2020, and the present suit was not filed until February 2021 (Doc. 1). Because the first suit was not still pending at the time the instant case was filed, the Court believes the appropriate doctrine is actually res judicata. The parties' arguments made regarding claim splitting suffice to evaluate whether Gaddis's claim against Officer Lannom is barred by res judicata. *See Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. Nov. 23, 2021) ("'Claim splitting in duplicative lawsuits' is a subset of the res judicata doctrine." (quoting *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011))).

"District courts ordinarily should not dismiss a complaint based on an affirmative defense such as res judicata." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (citations omitted). "But when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate." *Id.* (internal quotation marks and citations omitted).

Res judicata, or claim preclusion, "refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). In other words, claim preclusion "prevents the relitigation of claims already litigated as well as those that could have been litigated but were not." *Palka v. City of*

*Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). *Id.* The preclusive effect of the previous judgment, which was issued by an Illinois court, is determined by Illinois law. *Arlin-Golf, LLC v. Vill. Of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011) (citing *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007)). The doctrine of res judicata under Illinois law has three requirements: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies. *Parungao*, 858 F.3d at 457; *Arlin-Golf*, 631 F.3d at 471.

Once the above elements are met, res judicata generally bars claims as of the time the first lawsuit was filed, but not those that accrue later. *Lucky Brand*, 140 S. Ct. at 1596 ("Claim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint . . . [because] [e]vents that occur after the plaintiff files suit often give rise to new material operative facts that "in themselves, or taken in conjunction with the antecedent facts, create a new claim to relief.") (citations and internal quotation marks omitted); *Ellis v. CCA of Tenn. LLC,* 650 F.3d 640, 652 (7th Cir. 2011); *Smith v. Potter,* 513 F.3d 781, 783 (7th Cir. 2008).

There is no dispute that a final judgment on the merits was issued in the state suit or that an identity of the parties exists between the state suit and the present suit. The only issue is whether an identity of the causes of action exists. "Illinois employs a 'transactional test' to decide whether complaints allege the same cause of action." *Parungao*, 858 F.3d at 457 (citation omitted). "Under this test, separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.*

(citation and internal quotation marks omitted).

In the first suit in state court, Gaddis sued Officer Lannom for malicious prosecution, alleging that Lannom did not have probable cause to initiate the proceeding and did so only out of malice and with the intent to harm Gaddis (Doc. 106-1). The state court granted summary judgment to Lannom in September 2020, finding that he did have probable cause to pursue an order of protection (Doc. 106-2).

Gaddis is now alleging in the present suit that Officer Lannom pursued the order of protection against him for retaliatory purposes and it was just one in a series of events that constituted a vast conspiracy to retaliate against him. It is clear that Gaddis is trying to rope Officer Lannom into the conspiracy in the present suit based on the same underlying event that his first state suit was based on. Gaddis has already had a full and fair opportunity to litigate the propriety of the order of protection that Lannom sought against him, and he should not be allowed to recontest the matter and potentially undermine the judgment in the first suit. *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008); *Palka*, 662 F.3d at 437. Therefore, Gaddis's claim against Officer Lannom in this case stemming from the March 25, 2018 incident is barred by res judicata.

Having found that the only two events Officer William Lannom is associated with in the complaint—the October 20, 2017 arrest and the order of protection proceedings initiated in March 2018 —cannot serve as a basis for Gaddis's conspiracy claim, Lannom is entitled to outright dismissal with prejudice from this action.

### D. JUNE 29, 2018 FIRST ARREST (Doc. 1, ¶¶107–110)

On June 29, 2018, Dorothy McCombs and Brenda Grant called the police and

Gaddis was arrested by Marion police officers and Defendants Tom Stearns and Logan Spinka for violating an order of protection. He was then released a few hours later after it was determined there was no order of protection in place. Gaddis alleges that his arrest on June 29, 2018 was in retaliation for his criticisms of Williamson County officials.

Officers Stearns and Spinka argue that Gaddis cannot include this incident in his conspiracy claim because it is duplicative of a prior suit, it constitutes improper claim-splitting, or it is precluded based on his previous suit against them for false arrest (Doc. 99, pp. 7–10; Doc. 101, pp. 7–10). Because Gaddis's first suit—SDIL Case No. 18-cv-1437-SMY—was not pending at the time the instant case was filed,[9] the proper doctrine to analyze is claim preclusion.

The preclusive effect of the previous judgment, which was issued by a federal court, is determined by federal common law. *Taylor*, 553 U.S. at; *Palka*, 662 F.3d at 437 (when the issue is "whether an earlier *federal* judgment has preclusive effect on a subsequent federal claim," then federal res judicata principles apply). Like Illinois law, claim preclusion under federal law has three requirements: (1) identity of parties in the two suits, (2) identity of claims, and (3) a final judgment on the merits in the first suit. *Scholz*, 18 F.4th at 952.

There is no dispute that, between the previous suit and the present suit, the first and third elements of res judicata are satisfied (Doc. 99, p. 10; Doc. 115, p. 7). The only

---

[9] Final judgment on the merits was entered in the first suit on July 27, 2020, SDIL Case No. 18-1729-SMY, Doc. 70,[9] and the present suit was not filed until over six months later in February 2021 (Doc. 1).

dispute is whether there is an identity between the causes of action in the two suits. As mentioned, federal law uses a "transactional" inquiry similar to Illinois law to decide whether an identity of claims exists. *See Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011). Federal law provides that there is an identity between claims if they "arise out of the same set of operative facts or the same transaction." *Id.* "This 'transactional' inquiry focuses on whether the claims comprise the same core of operative facts that give rise to a remedy." *Id.* (citation and internal quotation marks omitted). "Even if the two claims are based on different legal theories, the two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* (citation and internal quotation marks omitted). *Accord Scholz*, 18 F.4th at 952 ("[T]he legal theories for the claims in each case need not be the same provided they are based on the same, or nearly the same, factual allegations."); *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017) ("Two causes of action are identical if each claim is supported by the same factual allegations, and the judgment in each case would be based on the same evidence.") (citations omitted).

In the previous federal suit, Gaddis sued Officers Spinka and Stearns, claiming his arrest on June 29, 2018 constituted false arrest in violation of the Fourth Amendment. SDIL Case No. 18-cv-1437-SMY, Docs. 1, 20. Here, he alleges his arrest was in retaliation for his criticisms of local officials. Officers Spinka and Stearns argue that the allegations against them in the previous case and in this one "all arise out of" Gaddis's arrest on June 29, 2018 and in both cases he says the arrest was improper, albeit for different reasons (Doc. 99, p. 10; Doc. 101, pp. 9–10). As a result, Spinka and Stearns say this case involves

the same cause of action as the first case and is barred by res judicata (Doc. 99, p. 10; Doc. 101, pp. 9–10). Gaddis argues, however, that the First Amendment conspiracy claim in this case is distinct from the Fourth Amendment false arrest claim in the first suit (Doc. 115, p. 7; Doc. 120, p. 7). Gaddis once again asserts that the prior suit did not allege any form of conspiracy because he had no reason to believe that a conspiracy existed at that time, and therefore his cause of action in the present case did not exist at the time of the prior litigation (Doc. 115, pp. 5, 6, 7; Doc. 120, pp. 5, 6, 7).

The Court understands the argument that Gaddis is making and agrees with him to the extent he is arguing that claim preclusion does not bar him from bringing his conspiracy claim altogether. The conspiracy includes events which had not even occurred by the time the previous case was filed. Therefore, the judgment in the previous case "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328 (1955). While claim preclusion does not bar Gaddis's entire conspiracy claim, it does, in the Court's view, bar Gaddis from including the June 2018 arrest in his conspiracy claim and seeking to recover damages from the Officers who effectuated the arrest.

In his first suit, Gaddis challenged the validity of the arrest as a violation of the Fourth Amendment, and he lost. SDIL Case No. 18-cv-1437-SMY, Doc. 86. The judge ruled on summary judgment that probable cause existed for the arrest and the arrest was not unconstitutional. *Id.* In the instant suit, Gaddis is now claiming the arrest was part of a conspiracy to retaliate against him. It is clear that claim preclusion would bar Gaddis

from bringing a stand-alone claim that the June 2018 arrest was retaliatory and violated the First Amendment. Such a claim would arise out of the same event that was the subject matter of his first lawsuit—his first arrest on June 29, 2018. *Ross ex rel. Ross v. Bd. Of Educ. Of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007) (res judicata "require[s] the joinder of all legal challenges to a wrong, and all claims for relief arising out of those events . . . ." (quoting *Perkins v. Board of Trustees of University of Illinois,* 116 F.3d 235, 236–37 (7th Cir. 1997))). And its resolution would revolve around the same issue of whether probable cause existed for the arrest. *Lucky Brand*, 140 S. Ct. at 1597 ("If . . . a different outcome in the second action 'would nullify the initial judgment or would impair rights established in the initial action,' preclusion principles would be at play." (quoting Restatement (Second) of Judgments § 22(b), at 185)). *See also Lund v. City of Rockford, Illinois*, 956 F.3d 938, 945 (7th Cir. 2020) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest. . . . [P]robable cause defeats a claim of retaliatory arrest." (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019))).[10]

---

[10] The *Nieves* court carved out a very narrow exception, explaining that "Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." As an example, the *Nieves* majority described a hypothetical in which a police officer uses a jaywalking arrest to retaliate against an individual who has been vocally complaining about police conduct, when other jaywalkers are almost never subject to arrest. *Lund*, 956 F.3d at 945 (citing *Nieves*, 139 S. Ct. at 1727). Here, Gaddis does not allege that he fits into the *Nieves* exception, and he made no attempt to allege that police officers rarely make arrests in similar situations, or that other similarly situated persons were not arrested (*see* Doc. 1, ¶¶ 38–44).

If a stand-alone claim for retaliation would be precluded, then a claim for conspiracy to retaliate, in which Gaddis's arrest is recast as one of the retaliatory events in the conspiracy, is also foreclosed. In other words, Gaddis cannot circumvent the effect of claim preclusion by recasting his arrest as part of a conspiracy. That is because Gaddis is ultimately just trying to reframe and relitigate the validity of the arrest and bypass the judgment against him in the first suit. A win for Gaddis here would contradict the initial judgment that probable cause for the arrest existed. Therefore, claim preclusion bars Gaddis from claiming the first arrest on June 29, 2018 was part of the purported conspiracy.[11]

Having found that the only two events Officer Logan Spinka is associated with in the complaint—the October 20, 2017 arrest and the first arrest on June 29, 2018— cannot serve as a basis for Gaddis's conspiracy claim, Spinka is entitled to outright dismissal with prejudice from this action. Tom Stearns is likewise entitled to dismissal with prejudice because the first arrest on June 29, 2018 is the only incident he was associated with.

---

[11]*See Washington v. Baugh*, No. 17-CV-1162-NJR, 2018 WL 637719, at *5 (S.D. Ill. Jan. 30, 2018) ("The doctrine of res judicata applies even when a plaintiff attempts to re-plead conduct as a continuing violation that was previously brought as claims regarding discrete events.") (citing *Jordan v. O'Neil*, 28 Fed.Appx. 548, 552-53 (7th Cir. 2002)); *Robinson v. Allstate*, 706 F. Supp. 2d 320, 327 (W.D.N.Y. 2010), *aff'd* 508 Fed. Appx.   7 (2d Cir. 2013) (holding res judicata barred conspiracy claim where plaintiff took "the same allegations that formed the nucleus" of his previous suit, added additional defendants and a few other allegations based on conduct that occurred after the first suit was filed; "Plaintiff cannot escape the effects of the prior adverse judgment simply by casting his net a bit wider."); *Dantzler v. Pope,* No. CIV.A. 08–3777, 2009 WL 959505, at *3 (E.D.La. Apr. 3, 2009) ("The fact that Dantzler re-characterized his claims to allege a conspiracy does not change the fact that his claims arose out of the same transaction or occurrence that was the subject matter of his state court petition"); *Goodwin v. Home Buying Inv. Co.*, 352 F. Supp. 413, 415–16 (D.D.C. 1973) ("An allegation of conspiracy could not create a cause of action if the acts allegedly conspired in had been determined in a prior action not to be wrongful.").

The Court further notes that although Dorothy McCombs and Brenda Grant did not move for dismissal, this res judicata analysis applies equally to them given that Gaddis asserted claims against them for false arrest in his prior suit and judgment was entered in their favor. Consequently, the first arrest on June 29, 2018 cannot be included as part of Gaddis's conspiracy claim.

### E. DEFENDANT BRANDON ZANOTTI (Docs. 112, 113)[12]

Brandon Zanotti was the State's Attorney in Williamson County (Doc. 1, ¶16). In the complaint, Gaddis alleges that:

- Zanotti "[was] outspoken in [his] claimed belief" that Gaddis was "mentally unbalanced" (Doc. 1, ¶34);
- After he was arrested on November 30, 2018 for aggravated assault, "Zanotti's deputy" argued that Gaddis should not be permitted to be released on bond unless he submitted to a mental evaluation (Doc. 1, ¶64);
- Zanotti elected to file criminal charges against Gaddis for speaking to Defendant Dorothy McCombs on March 13, 2019 in violation of an order of protection, even though Gaddis claims his statement to McCombs was "protected by the First Amendment" (Doc. 1, ¶79); and
- Zanotti, "by and through an employee in his office, Betty Caraway," helped Jennifer Page procure an emergency order of protection against Gaddis in that Caraway obtained the necessary form from the circuit clerk's office and helped Page fill it out (Doc. 1, ¶133).

As a threshold issue, there is no basis for holding Zanotti liable for some of the conduct alleged by Gaddis because, according to the complaint, Zanotti was not directly or personally involved in the incidents. Specifically, the complaint claims it was "Zanotti's deputy," not Zanotti himself, who argued that Gaddis should have to submit

---

[12] Plaintiff did not file a response to the motion to dismiss filed jointly by Defendants Page, Wilson, and Zanotti (Doc. 113).

to a mental evaluation. And it was Zanotti's employee, Betty Caraway, who helped Jennifer Page apply for an order of protection. Zanotti cannot be liable under § 1983 for the purported misconduct of his subordinates or his employees simply because he was in charge. *E.g.*, *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) ("There is no such thing as *respondeat superior* liability for government officials under § 1983.") (citation omitted); *Lennon v. City of Carmel, Indiana*, 865 F.3d 503, 507–08 (7th Cir. 2017) ("[T]here is no vicarious liability in a suit under section 1983."). And Gaddis has not alleged that Zanotti knew of and facilitated, approved, condoned, or turned a blind eye to his subordinate's unconstitutional actions (*see* Doc. 1). *Taylor*, 999 F.3d at 493–94, 495. *See also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("[P]ersonal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent.").

To the extent Zanotti *was* responsible for arguing that Gaddis should have to submit to a mental evaluation as a condition of his bond, this claim is barred by the doctrine of claim-splitting. Gaddis has already made the claim in a previously-filed, still-pending federal case that Zanotti requested a mental evaluation as a condition of bond related to his November 2018 arrest in order to retaliate against Gaddis for criticizing local government officials. SDIL Case No. 19-cv-781-DWD, Doc. 1; Doc. 37, p. 3. He cannot bring this same claim in a second suit by recasting it as part of a continuing civil conspiracy.

Additionally, as Zanotti points out, Gaddis is only seeking monetary damages against him, but the Eleventh Amendment bars suits for money damages against state

officials acting in their official capacities. *E.g.*, *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994). And in Illinois, the state's attorney is a state official. *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999) (citing *Garcia*, 24 F.3d at 969); *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1272 (Ill. 1990). Gaddis did not file a response to Zanotti's motion to dismiss and therefore does not dispute Zanotti's claim that Gaddis "clearly is suing [him] in his official capacity as the State's Attorney of Williamson County" (Doc. 113, pp. 9–10).

But in the event that Gaddis is alleging that Zanotti was acting in his individual capacity, rather than his official capacity, at least part of his claim is barred by prosecutorial immunity (Doc. 113, pp. 12–14). Prosecutors are absolutely immune from liability for damages under § 1983 "for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). "This immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016). In contrast, prosecutors acting in an administrative or investigative capacity are only entitled to qualified immunity. *Jones v. Cummings*, 998 F.3d 782, 787 (7th Cir. 2021) (citations omitted). Zanotti's actions in arguing for particular conditions for bond and bringing charges against Gaddis and initiating a prosecution are clearly prosecutorial in nature and entitled to absolute immunity. *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012).

That leaves only the allegations that Zanotti was outspoken in his belief that Gaddis was unbalanced. Gaddis does not include facts as to the nature of Zanotti's

statements, when and where they occurred, who the audience was, etc. (*see* Doc. 1). To the extent Zanotti's statements were made in court in connection with one of Gaddis's criminal cases, it seems that Zanotti would be protected by absolute immunity. On the other hand, if Zanotti's statements were made outside of court, it is not clear how the statements were possibly in furtherance of the conspiracy or contributed in any way to the deprivation of his constitutional rights. Simply put, this allegation is too vague to plausibly suggest that Zanotti was involved in some purported conspiracy to deny Gaddis his constitutional rights.

In sum, Gaddis's claims that Zanotti retaliated against him by requesting a mental evaluation as a condition of bond and pursuing criminal charges against him are dismissed with prejudice. His other claims against Zanotti are dismissed without prejudice and he can attempt to remedy the problems with those claims in an amended complaint if he so chooses.

### F. DEFENDANT ANDREW WILSON (Docs. 112, 113)

Andrew Wilson was the Clerk of the Williamson County Circuit Court during a portion of the events at issue (Doc. 1, ¶11). The complaint alleges only that Mr. Wilson was involved in the purported conspiracy as it related to the order of protection that Jennifer Page obtained against Gaddis in May 2020. Specifically, Gaddis alleges:

- Wilson's office provided forms to litigants, including petitions for no stalking, no contact orders, and Betty Caraway obtained such a form and helped Jennifer Page fill it out (Doc. 1, ¶133; *see also* Doc. 132-2 (Page's petition)).
- Wilson, "by and through his employees, procured the entry of said order in that his employees delivered the form order to [State's Attorney] Zanotti's employees and agents" (Doc. 1, ¶134).

- Wilson's office then issued a summons to be served on him with the emergency order (Doc. 1, ¶130).

In other words, Gaddis is claiming that Wilson was in on the conspiracy because his office provided the forms that were used in issuing the emergency order, which contained unconstitutional language, and then Wilson's office recorded the order and issued process for the order.

As a threshold issue, there is no basis for holding Defendant Wilson liable for some of the conduct alleged by Gaddis because, according to the complaint, Wilson was not directly or personally involved in the incidents; it was his employees. As explained above with respect to Brandon Zanotti, Wilson cannot be liable for the conduct of his subordinates or his employees simply because he was in charge, and Gaddis has not alleged that any purported constitutional violation by Wilson's subordinates occurred at his direction or with his knowledge or consent (*see* Doc. 1).

Additionally, Wilson enjoys absolute quasi-judicial immunity. The absolute immunity afforded to judges has been extended to auxiliary judicial personnel, such as clerks, when they perform judicial or quasi-judicial functions integral to the judicial process (such as issuance of an arrest warrant), administrative functions pursuant to the explicit direction of a judicial officer or court order, or duties that are a "basic and integral part of the judicial process" (such as filing a complaint). *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992). The extension of immunity is justified "because, just as judges should not be subjected to lawsuits from disappointed litigants, neither should someone who acts as a judicial agent become a "lightning rod for harassing litigation." *Schneider v. Cty. of Will*,

366 Fed.Appx. 683, 685 (7th Cir. 2010) (quoting *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir. 1980)).

Here, Wilson was required by law to provide forms for filling out a petition for an order of protection to any person not represented by counsel, like Jennifer Page. 740 ILL. COMP. STAT. 21/20(d). Therefore, by providing the form to Page, Wilson was simply doing his job. And Page's petition itself shows that it was a form "approved by the Conference of Chief Circuit Judges" and was required to be used (*see* Doc. 132-2, p. 1). As for the allegation that Wilson's "employees" "procured the entry of said order" by "deliver[ing] the form order to Zanotti's employees and agents" (Doc. 1, ¶134), the Court is not quite sure what Gaddis is saying the employees did. He certainly does not allege they were doing anything outside of their job duties as required by statute, court order, or a judge's directions. Finally, with respect to recording the order and issuing process on it, Wilson was obligated by statute to do both. 705 ILL. COMP. STAT. 105/12, 105/13, 105/14; *People ex rel. Pardridge v. Windes*, 113 N.E. 949 (Ill. 1916) (holding that circuit clerk's entry of the court's orders "is subject to judicial control" and the clerk "is not privileged to enter orders as he sees fit, contrary to the direction of the court"). This is clearly a function of Wilson's job that is entitled to quasi-judicial immunity.

For these reasons, Gaddis's claims against Andrew Wilson must be dismissed with prejudice.

### G. DEFENDANT JENNIFER PAGE (Docs. 112, 113)

Jennifer Page is a court reporter at the Williamson County courthouse. Gaddis contends that Page was outspoken in her belief that he was mentally unbalanced, and

Page had numerous discussions with personnel working in the courthouse about his mental condition (Doc. 1, ¶ 34). Gaddis further contends that Page took out an order of protection against him in May 2020 (*see* Doc. 1, ¶¶130–142). During the order of protection proceedings, Page introduced evidence of the signs Gaddis had posted and argued his taking her picture constituted stalking (Doc. 1, ¶¶139, 140). Gaddis alleges that "he would not have been required to respond to the proceedings," which the Court takes to mean that an emergency protective order would not have issued, had he not been vocal in his criticism of public officials (Doc. 1, ¶142).

Page argues that Gaddis's claims against her are barred by the Eleventh Amendment and qualified immunity (Doc. 113, pp. 11–12, 15–17). To the extent that she is a state official, it does not appear that Gaddis is suing her for actions taken in her official capacity as a court reporter. Rather, his allegations against her seem to be unrelated to any official function as a court reporter. Therefore, neither the Eleventh Amendment nor qualified immunity are applicable.

Page also argues that Gaddis's claims against her are barred by the *Rooker-Feldman* doctrine because his claim is inextricably intertwined with the Williamson County Circuit Court's rulings in the order of protection proceedings (Williamson County Case No. 20-OP-140) (Doc. 113, pp. 21–23). However, *Rooker-Feldman* does not bar the claims of federal-court plaintiffs who, like Gaddis, file a federal suit when a state-court appeal is pending. *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014).

That leaves Page's argument that Gaddis failed to allege facts sufficient to state a claim against her (Doc. 113, pp. 7–8). The Court agrees with the arguments Page made,

however, that does not entitle her to dismissal with prejudice. Gaddis can attempt to remedy the problems with his claim against Page in an amended complaint if he so chooses.

### H. DEFENDANT BETTY CARAWAY (Doc. 95; *see also* Docs. 117, 126)

Betty Caraway is the Assistant Juvenile Advocate and Witness Coordinator at the Williamson County State's Attorney's Office (Doc. 1, ¶12; Doc. 95, p. 1).[13] The only allegation concerning her in the complaint is that she "helped" Jennifer Page "to procure" a temporary order of protection in May 2020 (Doc. 1, ¶¶130–133). More specifically, Gaddis alleges that Caraway obtained the necessary form from the Clerk of Court's office, assisted Page in filling it out, and "further assisted" in the procurement of the temporary order (but Plaintiff did not specify how) (*Id.*).

Gaddis's allegations are insufficient for the Court to plausibly infer that Ms. Caraway was part of any purported conspiracy. The simple fact that Caraway allegedly helped Jennifer Page fill out her petition for an order of protection does not justify the inference that Caraway was acting pursuant to some unlawful plan to retaliate against Gaddis. The Illinois Stalking No Contact Order Act specifically provides that victim advocates are allowed to assist victims of stalking in the preparation of petitions for

---

[13] According to the Williamson County website, the victim/witness coordinator position at the State's Attorney's Officer was formed in 1985 through the Office of the Illinois Attorney General to serve the needs of victims and witnesses of violent crimes. The primary function is to provide information, referrals, and professional support during the criminal justice process. There is also a victim/witness coordinator dedicated to juvenile crimes, whose job it is to serve juvenile victims and adult witnesses and victims of juvenile crimes. *State's Attorney*, WILLIAMSON COUNTY GOVT., https://williamsoncountyil.gov/states-attorney/ (last visited March 4, 2022).

stalking no contact orders. 740 ILL. COMP. STAT. 21/30(b). Thus, by helping Ms. Page apply for an order of protection against Gaddis, Betty Caraway was, by all appearances, simply doing her job. There are no allegations, for example, that suggest Ms. Caraway's actions were outside the regular course of her job-related activities (*see* Doc. 1). There are also no allegations that suggest Ms. Caraway performed this function selectively or that there were other victims whom Ms. Caraway treated differently, *i.e.,* that she only helped people seeking an order of protection against Gaddis but not people seeking an order of protection against someone other than Gaddis (*see* Doc. 1). Accordingly, Gaddis has failed to allege facts from which the Court can plausibly infer that Betty Caraway was acting in furtherance of the purported conspiracy.

The Court wonders whether Caraway would be entitled to Eleventh Amendment immunity or quasi-judicial immunity like Andrew Wilson. But these arguments were not made and the Court will not attempt to answer those questions for Caraway in the absence of briefing on the matter. Consequently, the only basis for dismissing the claim against her is failure to state a claim. Caraway, like Jennifer Page, is dismissed without prejudice and Gaddis can attempt to remedy the problems with his claim against Caraway in an amended complaint if he so chooses.

### I. DEFENDANT WILLIAM HUDDLESTON (Doc. 111; *see also* Doc. 114)

Defendant William Huddleston was a Marion police officer (Doc. 1, ¶17). In the complaint, Gaddis alleges that Huddleston was involved in only one of the tortious acts: he re-arrested Plaintiff on April 10, 2019 for the second time on the same warrant he was arrested on the day before (*Id.* at ¶¶ 82–93). Huddleston argues that Gaddis failed to

plausibly allege that he committed an overt act in furtherance of a conspiracy because his actions, even as alleged by Gaddis, have a reasonable explanation: the LEADS system did not reflect that Gaddis had already been arrested when Huddleston arrested him on April 10, 2019 (Doc. 111, p. 7; *see also* Doc. 1, ¶86). However, Gaddis also says that Huddleston acknowledged that he knew Gaddis had been arrested the previous day and he knew he was arresting Gaddis on the same charge for a second time, but he nevertheless proceeded with the arrest (Doc. 1, ¶85). Gaddis alleges he would not have been arrested but for his criticisms of local government officials (*Id.* at ¶93). The Court believes these allegations are sufficient to give rise to the inference that Officer Huddleston had a choice whether or not to re-arrest Gaddis on April 10th. He could have opted to confirm Gaddis's arrest the day prior and work to update the LEADS system to reflect that arrest. But instead he opted to re-arrest Gaddis for a second time in order to retaliate against him.

That being said, the fact remains that Gaddis has failed to plead facts sufficient to tie this event into a larger conspiracy. *See supra* pp. 22–24. For that reason, Officer Huddleston remains entitled to dismissal without prejudice.

### J.  MOTION TO STAY (Doc. 131) & COURSE OF LITIGATION

The motion to stay was previously granted to the extent that it requested this matter not proceed with discovery until the pending motions to dismiss were ruled on (Doc. 134). The motion to stay was taken under advisement as to all other arguments (e.g., duplicative litigation, improper claim splitting, res judicata, Younger abstention) (*Id.*). The Court believes all of those substantive arguments have been appropriately addressed

above in the body of this Order.

At this point, Gaddis will be given leave to file an amended complaint consistent with the rulings in this Order. The Court will not move forward with a scheduling conference and discovery until the claims and Defendants in this case are firmly established. If he opts not to file an amended complaint, this case will move forward only as to Count 3 and 4 for false arrest against John Fleming.

CONCLUSION

The motions to dismiss filed by Defendants Betty Caraway (Doc. 95), Mary Griffith (Doc. 97), Logan Spinka (Doc. 98), Tom Stearns (Doc. 100), Bryan DeMattei (Doc. 102), Sam Ward (Doc. 104), William Lannom (Doc. 106), Justin Dwyer and Jesse Thompson (Doc. 108), William Huddleston (Doc. 110), and Jennifer Page, Andrew Wilson, and Brandon Zanotti (Doc. 112) are **GRANTED.**

Count 1 is **DISMISSED without prejudice** as to John Fleming, Brenda Grant, Dorothy McCombs, Justin Dwyer, Jesse Thompson, Jennifer Page, Betty Caraway, and William Huddleston. It is **DISMISSED without prejudice in part and with prejudice in part** as to Craig Oglesby and Brandon Zanotti. It is **DISMISSED with prejudice** as to Mary Griffith, Bryan DeMattei, Sam Ward, William Lannom, Logan Spinka, Tom Stearns, and Andrew Wilson.

Count 2 is **DISMISSED without prejudice**.

Gaddis shall have until April 6, 2022 to file a First Amended Complaint.

**IT IS SO ORDERED.**

**DATED: March 7, 2022**

s/Mark A. Beatty_____
**MARK A. BEATTY**
**United States Magistrate Judge**
